**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMANDA YANOVITCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ELECTROLUX CONSUMER PRODUCTS, INC.,<br><br>Defendant. | Case No. ____________<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Amanda Yanovitch, individually and behalf of all others similarly situated, through her undersigned counsel, brings this action against Electrolux Consumer Products, Inc. ("Defendant" or "Electrolux"). Plaintiff alleges the following based on personal knowledge as to her own acts and based upon the investigation conducted by her counsel as to all other allegations.

## INTRODUCTION AND SUMMARY OF ACTION

1. Plaintiff, individually and on behalf of the Class, brings this consumer class action, seeking damages and equitable relief from a dangerous and latent defect lurking in Defendant's cooking ranges. Plaintiff and the Class are purchasers of Electrolux cooking ranges, branded and sold under the Frigidaire brand name (the

"Ovens"). Electrolux, manufactured, marketed, distributed, and sold the Ovens, without disclosing to purchasers that the Ovens' glass window has a propensity to explode spontaneously and without external impact or misuse by the consumer (the "Defect"). Upon information and belief, the Defect is caused by Nickel Sulphide inclusion in the glass.

2. This Defect creates a serious safety issue and renders the Ovens unusable after manifestation. Information about the Defect would therefore be highly material to reasonable consumers.

3. Electrolux is unwilling to acknowledge the Defect, much less to eliminate it, or to provide refunds to consumers who have encountered it. Consequently, Plaintiff seeks to correct that injustice for themselves, and others similarly situated.

4. Electrolux designs, manufactures, markets, advertises, distributes, and sells appliances to consumers throughout the United States.

5. Electrolux distributes and sells its appliances, including the Ovens, both directly through its website and also through various authorized retailers.

6. Over the course of several decades, Electrolux marketed its line of products as high-quality, reliable appliances and gained the trust of consumers, who reasonably believe that Electrolux's appliances, including its wall ovens and ranges,

are made with quality materials. Consumers reasonably believe Electrolux's appliances can be used safely, as intended.

7. Defendant's reputation for quality hides an alarming Defect in the Ovens: the glass window in the front of the Ovens is predisposed to explode. When this window explodes with no warning, anyone standing nearby, or looking through the window, is in danger of being struck by sharp and burning hot shards of glass. The glass fragments have been found several feet away from the Ovens after such an explosion, and consumers have reported being cut by the shards of glass.

8. The Ovens include several models across Electrolux's product line; however, all contain the same Defect and all are subject to their glass doors spontaneously shattering. All of the included Ovens, whether gas or electric, contain the same, or substantially similar, glass windowed oven doors—which are identically or similarly designed and manufactured. Specifically, the Ovens at issue encompass the Frigidaire line of 30" Ranges.

9. The Defect is the result of uniform flaws in materials and/or workmanship and therefore poses a serious safety hazard to customers, operators, and anyone unfortunate enough to be standing nearby.

10. Moreover, once the Oven's glass window bursts, it is impossible to keep the temperature inside the oven at the level necessary to cook food. Therefore, even if

the user somehow felt safe using the Oven again after the Defect manifests, it would not be possible to do so.

11. The Defect renders the Oven useless at best and extremely dangerous at worst.

12. Numerous consumers have reported the Defect, which may manifest at any time. Consumers report witnessing the Defect as early as several weeks after purchase.

13. Since at least 2011, Electrolux has known that its Ovens were susceptible to the glass doors spontaneously exploding. Consumers have filed numerous incident reports about the Defect with the U.S. Consumer Product Safety Commission (the "CPSC"), which the CPSC in turn sent to Electrolux. Indeed from 2011 to present there have been approximately 322 complaints filed by consumers reporting to the CSPC that the glass door of their Ovens spontaneously exploded. Moreover, the vast majority of the consumers reported that the glass door exploded even though the oven had not been scratched, impacted, or bumped.

14. Consumers have also filed complaints with Electrolux directly via online product reviews posted to Electrolux's website and indirectly via reviews posted to the websites of authorized third-party retailers.

15. Electrolux is aware of the Defect. Not only does Electrolux have exclusive, non-public knowledge and data concerning the Ovens through its own

testing data, customers' complaints, warranty claims, and repair orders, it is or should be aware of the substantial numbers of consumer complaints on public forums. Despite numerous customer complaints—including those directly posted on Electrolux's own website—Electrolux refused to take action in the form of a recall or refund of the full purchase price.

16. Selling Ovens with dangerously defective glass windows jeopardizes the safety of the public.

17. Electrolux's refusal to provide a refund also forces its customers to bear the expense of its mistakes and malfeasance.

18. In addition to a startling lack of concern for the safety of its customers, Electrolux breached implied warranties and engaged in unfair and deceptive business practices.

19. As a result of Electrolux's conduct, owners of the Ovens, including Plaintiff, have suffered an ascertainable loss of money, and/or property, and/or loss in value. Consumers impacted by the Defect are forced to expend time and money on purchasing replacement parts and arranging, and paying for, a repair service call for the Ovens and lose use of the Ovens until they are repaired.

20. Meanwhile, Electrolux continues to unjustly enrich itself by selling the Ovens with no warning of the Defect.

21. Because the existence of the Defect was concealed by Electrolux, Plaintiff and the Class were deceived and deprived of the benefit of their bargain. A glass door on an oven that spontaneously explodes, without warning, has no value because it cannot be used safely. Alternatively, the Ovens have far less value than promised at the point of sale, because a range with a glass door that spontaneously explodes, without warning, and the attendant risk of harm, is less valuable than one that operates safely.

22. Plaintiff demands that Electrolux accept responsibility for the Defect by refunding the full purchase price. In addition, or alternatively, Electrolux should be required to buy back the Ovens.

23. This is an omissions case. Specifically, this case seeks relief for the harm that owners of the Ovens have suffered, as well as protection from the safety risks resulting from Electrolux's breaches of implied warranties and Electrolux's unfair, unlawful, and deceptive trade practices. Simultaneously, this case presents an equitable claim of unjust enrichment.

24. It is well settled that a "plaintiff is 'the master of the complaint,' and therefore controls much about [his or] her suit." *Royal Canin U.S.A., Inc. v. Wullschleger*, 220 L.Ed.2d 289, 302 (U.S. 2025). As detailed herein, Plaintiff's claims here focus on material omissions, not affirmative misrepresentations.

## JURISDICTION, VENUE, AND GOVERNING LAW

25. Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6), this Court has original jurisdiction. The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs. This is a class action in which at least one member of the Class is a citizen of a state other than the states in which Defendant is incorporated and has its principal place of business.

26. This Court has personal jurisdiction over this action because Defendant Electrolux is a foreign corporation, authorized to do business and does substantial business in the State of Delaware, selling its products through authorized third parties to Delaware citizens.

27. Venue is proper in this District under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.

28. Plaintiff is informed and believes, and thereon alleges, that each and every one of the acts and omissions alleged herein were performed by, and/or attributable to, Electrolux.

## PARTIES

29. Plaintiff Amanda Yanovitch is a resident of Midlothian, Virginia, who purchased one of the Ovens during the relevant time period.

30. Defendant Electrolux Consumer Products, Inc. is a Delaware Corporation, with its principal place of business located in Charlotte, North Carolina.

## FACTUAL ALLEGATIONS

### a. Common Allegations

31. The Ovens are marketed and sold as a multi-functional large kitchen appliance, commonly known as a range, with an array of features. Ranges in general contain both a stove cooktop and oven. The Ovens' functions include, among other things, convection cooking, self-cleaning, and air-fry. The Ovens are powered by either gas or electricity for cooking. Over at least the last five years, Defendant designed, manufactured, warranted, advertised, and sold the Ovens to thousands of consumers throughout the United States. Three examples of the Ovens are pictured below.[1]

[1] Pictured left, model number FGEF305RFF; Pictured center, model number LFE3054TS; Pictured right, model number LFEF3054TFC.





32. All models of the Ovens at issue (which include models that are discontinued or still for sale) have a substantially similar door with a glass window, which upon information and belief, is made of soda-lime glass.[2]

33. This window is predisposed to violently burst, without warning or action on the part of the user, and when shattering during use, can send shards of burning hot glass flying. Indeed, many consumers have reported being injured due to lacerations sustained from the resulting exploding glass.

[2] Soda lime glass is significantly less expensive to produce than other types of glass (e.g., borosilicate) because both raw material and energy costs are lower. Soda lime glass has a high coefficient of thermal expansion with very poor thermal shock resistance making it more prone to breaking or shattering. Accordingly, soda lime glass cannot withstand the same temperature ranges of glass such as borosilicate. As such, the use of soda-lime glass with Nickel Sulphide inclusions renders the Ovens particularly susceptible to the Defect.

34. In addition to the safety concerns caused by the Defect, the bursting of the glass window makes it impossible to keep hot air from escaping and cooler outside air from entering the oven, frustrating the Ovens' essential heating function. As a result, the manifestation of the Defect renders the Ovens inoperable.

35. Upon information and belief, this Defect is caused by common failures in material and/or workmanship. Specifically, Plaintiff alleges that Nickel Sulphate impurities in the glass render the Ovens' windows susceptible to sudden breakage.[3] In addition, the use of significantly weaker soda-lime glass and nickel sulphide inclusions renders the Defect's manifestation a more common occurrence.

36. Each of the Ovens contain common design and/or manufacturing Defects that can and have caused the glass on its doors to break or shatter. Specifically, the glass used in the Ovens suffers from a uniform defect whereby it cannot withstand the high temperatures that are common when the Ovens are used for their ordinary purpose, such as cooking, resulting in the breaking or shattering of the glass-front door under normal and foreseeable use by consumers.

---

[3] Barry, J.C., Ford, S. "An electron microscopic study of nickel sulfide inclusions in toughened glass." Journal of Materials Science 36, 3721–3730 (2001); Mognato, E. and A. Barbieri, "The Breakage of Glass – Thermal shock and nickel sulfide inclusion." COST Action TU0905, Mid-Term Conference on Structural Glass, Belis, Louter & Mocibob (Eds). 2013. Pp 155-163; ASTM Standard C1036-21, "Standard Specification for Flat Glass," ASTM International, West Conshohocken, PA, 2021, DOI: 10.1520/C1036-21; Solinov, V.. "Effect of nickel sulfide inclusions on the spontaneous failure of toughened glasses." Glass and Ceramics - GLASS CERAM-ENGL TR. 64. 149-152. 10.1007/s10717-007-0038-z. 2007.

37. Electrolux expressly and impliedly warranted, via user manuals, marketing, advertisements, pamphlets, brochures, circulars, samples, and/or models that the Ovens are fit for the ordinary purpose for which such goods are used, including safely cooking food.

38. Electrolux also expressly warranted that, for a period of one year from the date of the original purchase, it would provide, free of charge, all labour and related service costs to replace any defective parts of the Ovens that fail due to defects in materials or workmanship.

39. Electrolux's warranty expressly applies to the original purchaser and any succeeding owner of the Ovens, creating privity between Electrolux on the one hand, and Plaintiff and Class Members on the other.

40. Unknown to consumers, but known to Electrolux, the Defect in the glass doors in the Ovens exists at the point of sale to consumers, and renders the Ovens unfit for the ordinary purpose for which they are sold.

41. As a result of the Defect, the Ovens pose an unreasonable risk of harm to consumers and their property.

42. The expected service life of the Oven should be in the range of 13 years and Plaintiff and consumers expect that the Ovens will last that long.[4] However, the

[4] *See* https://www.thisoldhouse.com/21018361/how-long-things-last (last visited Sept. 17, 2024) (average lifespan of electric range is 13 to 15 years, average lifespan for a gas range is 15 to 17 years).

Oven is prone to premature failure before the end of its expected service life due to the Defect.

43. The Defect is also invisible until it has manifested, making it impossible for consumers to identify the Oven as defective prior to purchase, and Electrolux knows or should have known that it typically manifests after the expiration of Electrolux's warranty, but far prior to the expected service life of the Ovens.

44. Accordingly, The Ovens are defective at the point of sale. Consumers could not reasonably know about the Defect at the point of sale and could not discover the Defect with a reasonable investigation at the time of purchase or delivery because a reasonable inspection by a consumer would not reveal whether the materials of the Ovens, the design of the Ovens, and/or the manufacturing processes related to the Ranges render them unsafe for normal and expected use.

45. As a direct, proximate, and foreseeable result of the Defect, Plaintiff and Class Members suffered damages, including, but not limited to: (i) the difference in value of the Ovens as warranted and the Ovens received; (ii) loss of use of the Ovens; (iii) property damage; (iv) costs to repair or replace their Oven door glass; and (v) consequential damages.

46. Had the Ovens been properly designed and/or manufactured free of the Defect, Plaintiff and Class Members would not have suffered damages in that they

either would not have purchased their Ovens on the same terms or for the same price, or they would have paid less for them.

**b. Plaintiff Yanovitch's Allegations**

47. On December 2, 2020, Plaintiff Amanda Yanovitch purchased a Frigidaire 30" Electric Range, model number FFEF30547S online from Home Depot. Plaintiff Yanovitch purchased the Oven for $719.00 plus tax. Plaintiff Yanovitch incurred additional costs for parts and services related to her purchase, including a 5-year protection plan for $160.00, a range power cord for $25.98, and the removal of her previous Oven for $25.00.

48. Plaintiff Yanovitch purchased the Oven for her personal, family, or household use to use in various food preparations. Plaintiff Yanovitch at all times has used her Oven in a normal and expected manner.

49. Plaintiff Yanovitch specifically purchased the Oven based upon the Frigidaire name, and reputation for quality. When she purchased this Oven in particular, she expected it would last more than several years, and that it did not contain a defect which would cause the glass door to shatter, posing a safety risk and rendering the oven unsafe.

50. Prior to purchasing her Oven, Plaintiff Yanovitch researched different ranges and viewed multiple advertisements, touting Frigidaire Ovens' reliability, durability, and superiority over competitive offerings. Plaintiff Yanovitch read

dozens of reviews of the Oven on various sites and selected this model based on its unique features, reasonable price, and positive reviews.

51. Like the ordinary consumer, Plaintiff Yanovitch did not have the opportunity to negotiate the terms of the warranty with Electrolux prior to or at the time of purchase. Plaintiff Yanovitch was likewise aware that other brands of ovens also came with similar terms and disclaimers, and thus, Plaintiff Yanovitch did not have a meaningful choice in the terms of the warranty or in selecting her Oven based on other available, less restrictive warranties.

52. At no point, in either researching Ovens, at the point of sale or otherwise did Electrolux disclose the Defect to Plaintiff.

53. Shortly after her purchase, Plaintiff's Oven was professionally installed in her kitchen, and she proceeded to use it. She regularly used the Oven as intended until the date of the incident described below.

54. Immediately after receiving her Oven, Plaintiff reviewed the documents included with the Oven. The documents did not disclose the Defect to Plaintiff.

55. On October 7, 2024, Plaintiff Yanovitch awoke at approximately 1:15 am to a loud sound resembling an explosion. When she entered her kitchen, she found the Oven's outer glass had shattered and littered her kitchen with glass shards.



Plaintiff Yanovitch's exploded glass Oven door (above)

56. After the incident, Plaintiff Yanovitch contacted Electrolux to inquire about replacing the oven or getting a refund, but their final offer was a 10% discounted coupon to purchase replacement glass for the door. Plaintiff Yanovitch was unsatisfied with the offer and did not purchase the replacement glass, as she felt it was Electrolux's responsibility to repair the damaged glass door.

57. As a result of the explosion, the interior of Plaintiff Yanovitch's Oven could not retain the requisite heat to prepare meals or operate safely. It was therefore useless for its intended purpose.

58. Because Electrolux unlawfully concealed the latent Defect from Plaintiff prior to her purchase, and later, after the Oven was installed and used in her home, Plaintiff did not suspect (and had no reason to suspect) that there was anything wrong with her Oven until the glass door exploded.

59. Plaintiff's Oven did not operate safely for the full duration of its expected useful life because it contained the Defect at the time it was purchased. Had she known of the Defect, Plaintiff either would not have purchased the Oven or would have paid less for it. Therefore, she did not receive the benefit of her bargain.

**c. Defendant Had Superior and Exclusive Knowledge of the Defect.**

60. Defendant knew or should have known when it sold the Oven to the public that the Oven suffered from the Defect, was unsafe, could not be expected to function properly for the full duration of its expected useful life, presented an unreasonable risk that the glass would shatter, and presented an unreasonable and significant risk of personal injury and/or property damage to consumers and the public.

61. Defendant owed Plaintiff and all those similarly situated a duty to disclose the Defect because Defendant:

a. Possessed exclusive knowledge of the Defect and necessarily had superior knowledge of the Defect because, among other things, only Frigidaire had access to the results of extensive pre-release testing and various organized repositories of internal data;

b. Intentionally and actively concealed the Defect by, among other things, providing ineffective repairs to mask the Defect and shifting blame to

the consumers instead of acknowledging the true nature of the Defect; and/or

c. Made material omissions, failing to warn purchasers that the Ovens were defective and failing to qualify its representations, including as to the Ovens' reliability, durability, safety, and efficacy.

62. Defendant's knowledge of the Defect stems from various sources.

63. ***First***, Defendant would have learned of the Defect through its extensive quality control measures and internal pre-release testing.

64. On information and belief, prior to mass production, Defendant first builds prototypes of the design to zero in on the final, mass production ready design. The first prototype build is a test run of key product concepts to gain confidence that the product can work. Next comes the EVT or Engineering Validation Test, which consists of significantly increased quantities of units which must be fully functional and testable, and all functional test stations must be present and collecting data. Next comes the DVT or Design Validation Test where substantial quantities of units are built made of components from production processes and on a line following production procedures. PVT, or Production Validation Test, is the last build where thousands of units are built before ramp and mass production.

65. During pre-production and before product release, Defendant conducts extensive testing not only for each new product as a whole, but also for each and

every part of each new product. Defendant employs lead engineers who are tasked with leading the architecture, design and implementation of the test line for new products from pre-concept until mass production. Defendant's engineers define tests for functionality and performance early in the product development lifecycle.

66. Defendant conducted extensive testing on the Ovens and each of its components, including the Ovens' glass window to ensure its individual structural integrity as well as its integrity within the context of the entire appliance. Defendant designed, engineered, and extensively tested each of its Ovens' parts purportedly to ensure the highest quality, safety, and reliability. As demonstrated by Defendant's disclosures set out below, Defendant continually tests and monitors the performance of its products even after release.

67. For example, Electrolux Group states in its Investor Relations page that its "R&D process is based on a long history of consumer insight built on surveys, consumer data, home visits, user experience labs combined with daily monitoring of consumer reviews of both Electrolux and competitors' offering."[5]

68. As described further below, the extensive range of rigorous mechanical tests Defendant conducted on its Ovens, including but not limited to torsion tests, vibration tests, shock tests, hinge tests, and pressure tests, would have revealed the

[5] https://www.electroluxgroup.com/wp-content/uploads/sites/2/2025/05/How-we-create-value-2024.pdf

Defect. Additionally, other tests that Defendant conducted to simulate consumer experience, including real-life user studies and reliability-growth tests, also would have revealed the Defect.

69. Defendant conducts extensive validation testing before releasing its products to the marketplace, and its pre-release testing meets basic industry standards for assessing product reliability and durability. The purpose of such testing is to expose any design, manufacturing, or parts weaknesses that may result in field failures, warranty claims, and general functional reliability over the intended life of their products.

70. Validation testing covers all system aspects of the Ovens, including mechanical and system reliability, as well as safety, compliance to applicable standards, electromagnetic emissions, energy efficiency, and sustainability. Mechanical and system reliability tests are designed and used to demonstrate that an oven design and the finished product perform reliably for the life of the product.

71. Defendant conducted extensive tests on the Ovens. Nicola Tonello, Electrolux's global laboratory methods competence leader, whose experience includes quality analysis and root cause analysis, has stated: "At Electrolux, we undertake a number of different testing processes on our electronic systems, including the full development of the system itself. The tests are done at different stages of the product development process and include pre-compliance and full

compliance EMC tests and environment, mechanical, reliability, safety and performance testing."[6] In addition, "Electrolux has testing laboratories around the world, located in different regions and belonging to different product categories." This is to "ensure[] that we can meet the specific needs of people globally whilst adhering to geographic specific legislation."

72. In an interview published by Consumer Electronics Test & Development magazine, Tonello revealed that "Electrolux uses its internal laboratories to conduct the testing. These are equipped with the latest generations of instruments and are compliant with quality standards including ISO 17025."[7] Tonello continued: "For environmental testing we are using climatic chambers. We have about 50 of these around the world for testing electronic boards and components, and we also use vibration shakers. Both of these can also be used for reliability methodologies."

73. Defendant thus developed its own tests for the Ovens. Electrolux's testing resources, including environmental and vibration testing performed by Defendant on the Ovens, would have revealed the Ovens' glass failures.

74. Defendant's other mechanical durability tests include hinge tests, which involve repeatedly actuating the hinge to simulate a lifetime of use of opening and

---

[6] https://www.electroluxgroup.com/en/testing-testing-how-we-test-electronics-to-connect-well-with-consumers-33254/#:~:text=The%20tests%20are%20done%20at%20different%20stages%20of,uses%20its%20internal%20laboratories%20to%20conduct%20the%20testing. (Last accessed on 7/8/2025).
[7] *Id.*

closing the Ovens' windowed door, as well as pressure tests to test the durability of the enclosure, glass, internal components, and temperature tolerances. These tests, too, would have shown the deficiencies of the Ovens' structural integrity, including that the glass is not sufficiently durable and that the Defect manifests because the Ovens cannot withstand the temperatures or pressure applied to the glass from normal use, including while heating or cooking food.

75. Defendant also employs a team of reliability engineers to ensure its products live up to its standards (and those of its customers). Defendant's reliability engineers are responsible for leading and executing reliability tests on Defendant's appliances, including but not limited to the development of new test procedures to quantify the reliability of a design, stress tests, and failure analysis resulting from these tests.

76. Reliability engineers conduct various technical analysis, including Failure Mode and Effects Analysis (FMEA) and Fault Tree Analysis (FTA). They also develop complex reliability test plans at each engineering design phase to target key deign features and changes. Examples of such tests conducted specifically on the Ovens include mechanical stress tests, shock tests simulating loads applies through normal use, environmental tests, and vibration tests.

77. Such targeted tests also would have revealed that the glass windows are insufficiently supported and subject to failure. For example, vibration tests assess the

integrity of the Ovens' structure, and such test also would show that the Ovens' glass window is structurally weak.

78. Reliability engineers also conduct reliability growth modeling and statistical risk assessments of failures using Highly Accelerated Life Testing (HALT) and assess the physics of failure (PoF) to predict the expected life of the Ovens. Such tests project product longevity, weathering performance, and probability of failure.

79. These reliability-growth tests are conducted specifically for structural integrity purposes, and include tests that apply various stresses, such as mechanical, electrical, and thermal stresses.

80. Real-life user studies are also a significant component of Defendant's pre-release testing. On information and belief, hundreds of employees are provided with pre-production units in the months leading up to a product launch and report back their experiences to Defendant.

81. Because the Defect manifests during foreseeable normal consumer use, Defendant's rigorous testing simulating consumer experiences would have revealed that the Ovens are not durable and fail under normal and foreseeable use by consumers.

82. The extensive pre-release testing described above conducted by Defendant's employees would have alerted Defendant to the Defect. One or more of these tests would have resulted in glass failures due to the Defect.

83. Because Defendant conducted pre-release testing months before product release, Defendant had knowledge of the Defect before releasing the Ovens into the stream of commerce.

84. Once mass production begins, EFFA is undertaken based on early returns. EFFA begins in the first weeks after shipping to capture returned units back from the field in order to conduct failure analysis on them

85. Defendant's knowledge of the Defect thus accumulated after its receipt of other data shortly after release, including but not limited to many consumer complaints made directly to Defendant (online, telephonically, and in-person) and repeated service repair requests stemming from glass failures.

86. ***Second***, Defendant had knowledge of the Defect resulting from hundreds, if not thousands, of users having reported the Defect and resultant effects, as outlined herein, to Defendant, and having sought out repairs from Defendant. Electrolux maintains various repositories documenting consumer concerns about the Ovens, including but not limited to repair data, warranty claims, and feedback from product specific pages.

87. Consumers complained to Defendant about damage caused by the Defect almost immediately after Defendant released the Ovens. Consumers explained that the Defect manifested suddenly and unexpectedly, and they made clear that the glass window damage was not the result of damage or misuse on their part.

Defendant nonetheless blamed consumers for the Defect and has largely refused to cover the cost of repairs, but instead quotes consumers costly fees.

88. Shortly after the Ovens were released, consumers contacted Defendant by phone, online, and at authorized retail stores for support or service relating to the glass windows. Defendant maintains records of concerns raised by consumers complaining about the glass windows. Additionally, consumers sought out repairs from other providers in mass numbers. Importantly, Defendant receives repair data from major service providers, such as Home Depot, that also would have alerted it to the Defect.

89. Consumers exhausted various channels to report the Defect and seek repairs, including but not limited to providing comments on the specific product pages, calling customer service, sending messages by phone, sending emails, making warranty claims, and lodging complaints in the follow-up customer service survey when the employees routinely denied the existence of any defect and shifted blame to the users. Consumers often made repeated contact with Defendant, and Defendant notes the various means that consumers contact Electrolux about a single product purchase.

90. To streamline its response to the rising number of consumer complaints, Defendant developed a standard response: denying that the issue is widespread, insisting that the damage was the consumer's fault, and refusing to cover the repair or

replacement. However, to minimally assuage consumers, Defendant relayed to consumers that their cases and concerns were documented.

91. Defendant continuously received and tracked claims made by consumers relating to the Ovens from various sources. For example, Defendant (both directly and through its third-party authorized service providers) continuously received and tracked claims made under the Limited Warranty, including the facts and circumstances reported with those claims.

92. Additionally, Defendant carefully reviews consumer feedback through other standardized repositories. For example, as previously noted, consumers submitted feedback about the Defect on specific product pages that allows Defendant to track and review comments regarding the Ovens specifically. Defendant's feedback form on its website allows consumers not only to select the nature of their feedback, such as "Service/Repair Feedback," and "Product Question or Comment," but also to leave a message inviting the consumer to "Please share your experience and feedback. What did you like? What can we improve upon?"[8]

93. Despite various organized repositories of customer complaints concerning damage to glass windows free of user error, Defendant directs its

[8] https://www.electrolux.com/en/contact-us

employees to stick to the standardized response of feigning ignorance and shifting blame to the user.

94. ***Third***, other teams at Electrolux monitor product quality and performance both before and after product release.

95. Defendant employs field and lab quality engineers that assess all aspects of product quality for the Ovens and its other products. As a key responsibility, these field and lab quality engineers interpret data to manage and improve product and service quality. For example, a laboratory engineer is "responsible for ensuring testing of key functionality and safety, compliance with technical standards (internal/external), and providing improvement proposals. This will involve validating specifications and ensuring testing as required on: Thermal safety for electric and glass products according to internal/external standards, including preparation of relevant documentation...Cooking performance...Components/product reliability/lifetime, components performance[.]"[9]

96. Field and lab quality engineers are "able to provide improvement proposals to Platforms, participate in concept development, and contribute to FMEAs (Failure Mode and Effects Analysis)."

[9] https://career.electroluxgroup.com/global/en/job/JR70648/Senior-Laboratory-Engineer

97. Though Defendant's repair data is not publicly accessible, it is apparent from publicly available data that the amount of Oven glass window repairs is significant. Defendant's employees, including its field quality engineers, thus collected field quality metrics reflecting the Defect, including but not limited to, the early failure rates and the repeat-repairs for the Ovens' glass window from its EFFA program. This data would show that it is inaccurate and disingenuous to suppose that the failures are customer-caused rather than due to the flawed and compromised glass window.

98. Modern companies, including Electrolux, have "internal product recall team[s]" tasked with "implementing quality control procedures designed to reduce the risk of—and perhaps even prevent—major recall expenditures."[10] As an example of this team's work, Defendant has a concentrated page for one such recall based on Defendant's internal data for the specified product: an icemaker. In it, Defendant states: "Because of our commitment to product safety and to you, we are providing free in-home installation of a new icemaker for impacted models." Defendant's internal reporting mechanisms would have discovered the Ovens' glass window failure stemming from the Defect.

[10] American Society for Quality, "What Is a Product Recall?" https://asq.org/quality-resources/recalls

99. ***Fourth***, online reputation management ("ORM") is now a standard business practice among most major companies, including Electrolux, and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on consumer services. "Specifically, [ORM] involves the monitoring of the reputation of an individual or brands on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before the damage to the individual's or brand's reputation."[11]

100. The internet is replete with complaints from consumers who have expressed dissatisfaction about the Defect, including through the CPSC.

101. Upon information and belief, Defendant's knowledge of these facts may be established through consumer complaints, including several years' worth of public internet posts regarding the glass window of the Oven shattering during normal use. Despite years of customer complaints—including those found on its own website—Defendant has failed to act to remedy or eliminate the Defect in the Oven or remove it from the stream of commerce.

[11] WebSolutions, "Online Reputation," https://websolutions-maine.com/online-reputation/

102. Moreover, as alleged above, since 2011 Electrolux has received more than 320 complaints from consumers filed with the CPSC concerning the Defect and the safety risks it presents in Electrolux's products.

103. The following is a sampling of the over 320 complaints filed with the CPSC, all of which were received by Electrolux, establishing its knowledge of the Defect from at least 2011.

104. On July 13, 2011, an incident report was filed with the CPSC and received by Electrolux concerning the Defect in one of its Ovens, model number FGF337BCF.[12]

**Incident Details**

**Incident Description:** The consumer says that her stove exploded. she says the exterior glass on the oven door exploded and shot glass all over her kitchen. The consumer contacted the manufacturer who sent out a technician for a fee. The consumer says the gas nor the oven was on. The gas company verified that there is no gas leak. The consumer is wondering why the glass exploded. she says the internal glass is still in tact. The entire frame of the stove is distorted now. The consumer says that the manufacturer also offered a 40% rebate on the purchase of the new stove. The consumer says that the manufacturer has replaced the glass but she says the frame of the stove is so distorted that there are several gaps

**Incident Date:** 5/15/2011

**Incident Location:** Unspecified

105. On July 10, 2012 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number VFFGF30232QA.[13]

[12] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1191587
[13] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1256806

**Incident Details**

**Incident Description:** we bought a Frigidaire gas range 2 years ago April. the gas stove was not in use. we heard a loud noise the glass door had exploded with tint pieces of glass every where I would hate to think what would of happened if someone was in the room. we have a small grand child living with us. I reported it with no satisfactory results . they claimed they had no complaints of this happening to anyone else but I doubt it. We have gone without the use of an oven for 1week. I also wonder about using safety glass.

**Incident Date:** 5/26/2012

**Incident Location:** Home/Apartment/Condominium

106. On September 19, 2013 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FGFL67HSG.[14]

**Incident Details**

**Incident Description:** The consumer says that the stove was not in use as they had been away for a week on vacation. They came back home to find the outer oven glass door totally exploded into small tiny shards. She says the outer glass was completely shattered out onto the tile floor. She says it does not appear the glass just fell out but had exploded. She was not home at the time of the incident. She says the inner glass is still in tact. She contacted the manufacturer who said the unit is not on recall. They did not provide any assistance.

**Incident Date:** 7/20/2013

**Incident Location:** Home/Apartment/Condominium

107. On February 19, 2014 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number PLEFZ398ECB.[15]

---

[14] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1342170
[15] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1387622

**Incident Details**

**Incident Description:** We used the stove to cook dinner, it was set at 375 for about 30-40 minutes and then shut off while we ate. After about another 30-40 minutes after the stove had been shut off the outside glass just exploded and shattered glass went everywhere. We have 3 small kids at home ranging from 2-7 and even though no one got hurt there could of been a different outcome. There was no cracks in glass and no one was near the stove for them to of hit it with anything.

**Incident Date:** 2/18/2014

**Incident Location:** Home/Apartment/Condominium

108. On September 12, 2014 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FGGF3054KFK.[16]

**Incident Details**

**Incident Description:** The front pane of glass in our Frigidaire gas range exploded. This happened on 9/4/2014 at 11:30 AM Central Time. The oven was last in use on 9/3/2014 at approximately 6:00 PM. No one was in the kitchen when the explosion occurred. No damage was incurred to the property. The model number is FGGF3054KFK, serial number is VF10265524. After searching the internet, apparently this is not uncommon for the glass to explode while not in use.

**Incident Date:** 9/4/2014

**Incident Location:** Home/Apartment/Condominium

109. On June 26, 2015 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number LGEF3045KFB.[17]

---

[16] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1426685
[17] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1481247

**Incident Details**

**Incident Description:** Caller stated that while oven was on for approximately 10 mins and the oven outer glass door exploded. The glass pieces shattered all over the kitchen floor. The manufacturer was not contacted as yet. There were no prior incident or service calls associated to this unit. Caller feels that this oven door is a safety hazard and should be reported.

**Incident Date:** 4/25/2015

**Incident Location:** Home/Apartment/Condominium

110. On June 20, 2016 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FFGF3047LSG.[18]

**Incident Details**

**Incident Description:** The glass door on the front of my Frigidaire oven exploded this morning. The oven is five months old and has never been damaged or had any prior service problems. About an hour before the oven exploded, I used it to bake potatoes for about forty-five minutes at 400 degrees Fahrenheit. Although I use the oven daily, I have never used the self-cleaning feature, rarely use it to broil food, and have never damaged it in any way. Now, the oven is completely inoperable and there are nuggets of glass periodically falling out of it onto my kitchen floor. The oven is under warranty and after taking several photos of the damage, I called Frigidaire for assistance. Their customer service was both unhelpful and disinterested in my problem. The only solution they offered me was to have a contractor come to my home in four days, during the middle of a workday, to perform diagnostic tests on the oven. I was told that if the contractor deemed it appropriate, they could order replacement parts for the oven. From my perspective, this was a completely unacceptable response to a dangerous condition caused by a product under warranty.

**Incident Date:** 6/11/2016

**Incident Location:** Home/Apartment/Condominium

111. On April 10, 2017 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number LGEF3043KFN.[19]

[18] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1576019
[19] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1644101

**Incident Details**

**Incident Description:** This is about my Frigidaire Electric Range Model# LGEF3043KFN, Serial# VF43109707. which we bought from Lowes on 10/1/2014. After I used the self-cleaning for the first time, the outside glass exploded on February 18th. Since I have never used this feature, I pulled out my manual and followed the instructions.I had pulled out all the racks, wiped up the bottom as instructed. When I set the cleaning time, I changed the cleaning from 3 hours to 2 hours because I felt that the range wasn't that dirty. The door locked and it started cleaning. After about 2 hours, the oven beeped, like the manual said it would. All the lights were off, showing the cleaning had stopped. Knowing it would still be too hot to do anything with, I left the kitchen and while sitting in the leaving room, about 15-30 minutes later, I heard a big explosion from the kitchen, I went in and there was glass everywhere with a big hole in the middle of the oven door. The inside door glass was still whole, it was just the outside glass that was broken. I was just thankful that I wasn't in the kitchen at the time, or I would of been hit with this glass. We bought this range from Lowes and luckily we bought the extended warranty (5 years). It took them almost 1 month to respond. The guy told us this is happening to a lot of ovens after the self-cleaning. He had no idea as to why. We are now in wait time to see if he can get the whole door. If not he will be replacing the glass. This worries me greatly.

**Incident Date:** 2/18/2017

**Incident Location:** Home/Apartment/Condominium

112. On June 19, 2018 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FFEF3054TSC.[20]

**Incident Details**

**Incident Description:** I WAS STANDING IN MY KITCHEN WHEN MY FRIGIDAIRE OVEN DOOR EXPLODED GLASS WENT AS FAR AS A FEW FEET AWAY THE STOVE WAS JUST TURNED ON WHEN IT HAPPENED. THE STOVE IS ONLY ABOUT 6 MONTHS OLD. I HAVE NOT EVEN SELF-CLEANED IT YET. THE DOOR HAS NOT BEEN HIT WITH ANYTHING. I DON'T UNDERSTAND HOW THE OUTER GLASS COULD JUST EXPLODE LIKE THAT. WHAT BOTHERS ME MOST IS THE DAY BEFORE I WAS TEACHING MY 8 YEAR OLD GRANDSON HOW TO COOK AND BAKING WITH MY 2 YEAR OLD GRAND DAUGHTER. WHAT IF THEY WERE LOOKING AT WHAT THEY MADE THROUGH THE GLASS. THESE PEOPLE CLAIM THEY ARE ALL ABOUT SAFETY BECAUSE NO ONE HAS GOTTEN INJURED. THIS COULD HAVE BEEN A DISASTER IF THE KIDS WERE LOOKING THROUGH THAT GLASS. I THINK THAT THIS SHOULD BE LOOKED INTO A LITTLE CLOSER BECAUSE THERE IS PLENTY OF PEOPLE WHO COOK WITH THEIR CHILDREN AND GRANDCHILDREN.

**Incident Date:** 6/10/2018

**Incident Location:** Home/Apartment/Condominium

[20] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1767704

113. On February 22, 2019 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FGEF3035RFB.[21]

**Incident Details**

**Incident Description:** Our family had just turned our oven on to preheat it for dinner. Within five minutes, there was a very loud, explosion like sound. I had been standing two feet in front of the oven and felt debris hit my legs and feet. I looked down and the front glass window of our oven had exploded and shattered into lots and lots of little pieces. Thank goodness I had been wearing pants and slippers so I received no injuries, but most of all, thank goodness our two toddlers had not been near the oven. It was terrifying to even think of what could have happened.

**Incident Date:** 12/22/2018

**Incident Location:** Home/Apartment/Condominium

114. On November 18, 2019 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FGEF3030PFB.[22]

**Incident Details**

**Incident Description:** Caller is reporting that her outer oven glass door exploded while in use. She stated that it was in the pre-heating mode at 350 degrees for a few mins when the incident occurred. Caller stated that the glass pieces blew all over the room about 4ft from its location. No injuries were sustained from this incident. The manufacturer was contacted and she was advised that a replacement glass would sent out at her expense but they were not going to take responsibility for this incident. Caller is concerned that this oven door is a safety hazard and should be reported for a recall.

**Incident Date:** 10/2/2019

**Incident Location:** Home/Apartment/Condominium

[21] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1819795
[22] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1908808

115. On November 11, 2020 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number LFEF3054TFE.[23]

**Incident Details**

**Incident Description:** My children and I were in the back rooms when we heard a loud bang from the kitchen. The outer glass from the oven shattered. The oven was not in use and had not been in use for at least several days. The pieces of glass were everywhere and my two young children were terrified. The glass is difficult to clean up as I am pregnant, making the oven unusable and my kitchen a minefield.

**Incident Date:** 8/20/2020

**Incident Location:** Home/Apartment/Condominium

116. On February 11, 2021 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FFEF3054TS.[24]

**Incident Details**

**Incident Description:** What happened that made you want to report? The glass door on my Frigidaire oven spontaneously exploded. This is not normal wear and tear, this must be a factory defect. A quick online search shows hundreds of reports of exploding glass oven doors nationwide. I also found investigative TV reports and a website (classaction.org) collecting information for a potential class action lawsuit. There is clearly a problem here. What type of product(s) were being used? Frigidaire electric oven model #FFEF3054TS Who was using the product(s)? Mother of house was using the product. How were the product(s) being used? The night this happened, I mixed up cookie dough, pushed the button to turn on my oven, and heard a loud explosion. Then I heard glass shattering. The entire exterior glass door on my oven shattered next to my legs. I was in a dress, and had no protection for my legs, but was at least wearing socks. (Obviously I didn't move.) Both my husband and college aged son heard the loud bang, followed by me screaming, and thought I had fallen. My husband was upstairs, my son was downstairs, and I was on the main level. The explosion was loud enough for both of them to hear it on a different floor. Were there any injuries that happened or may have happened while using the product? I slowly backed away while my husband swept the glass up. I could feel tiny pieces of glass in arms and legs, so showered and carefully dried off with a heavy towel. I am also a cardiac patient, and the shock triggered a heart episode for me. However, I was able to manage it with no damage to my heart.

**Incident Date:** 1/19/2021

**Incident Location:** Home/Apartment/Condominium

[23] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=2008580
[24] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=2980553

117. On December 21, 2021 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FFEF3016USB.[25]

**Incident Details**

**Incident Description:** 2 year old Frigidaire electric freestanding range outer door shattered. Not in use at time it happened. Report Addendum: Glass exploded/shattered all over our kitchen. If a child or pet had been near the stove when it happened I believe they could have been harmed. Glass also ended up in our pets' food bowls. What if we had not been home to clean it up immediately. Some of the glass was jagged and we had to be careful while cleaning up to not be cut which is a risk. This is a serious risk especially for a 2 yr old product! Someone needs to look into these occurrences. It is not safe, and happened by no fault of our own.

**Incident Date:** 12/16/2021

**Incident Location:** Home/Apartment/Condominium

118. On February 23, 2022 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FFEF3054TS.[26]

**Incident Details**

**Incident Description:** Oven glass exploded. Oven was not being used/had not been used for a day. There was a large popping sound and glass shattering. This oven is only 2 years old. It has never been abused or damaged in any way.

**Incident Date:** 2/18/2022

**Incident Location:** Home/Apartment/Condominium

119. On January 30, 2023 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FCRE305LAFA.[27]

---

[25] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3526374
[26] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3603127
[27] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4077637

**Incident Details**

**Incident Description:** I purchased a brand new Frigidaire oven (model # FCRE305LAFA) from Lowes in December 2019. Not even 3 years later, on November 3, 2022, the exterior glass on the oven door exploded sending shards of glass over 10 feet across my kitchen. The oven was not being used and was not even on and randomly and without warning shattered while I was home with my 4 year old daughter. Luckily nobody got hurt because we were not in the kitchen. But if we had been in the kitchen, we could have been cut by the glass. My daughter whose face is at the height of the oven door would have had glass shards explode in her face including in her eyes. I called Frigidaire and was told this is a known issue and there's nothing they can do since it's out of warranty. I went to the Lowes website to leave a review about my experience and found several other reviews that say the same thing happened to them. I did a quick search for reviews that mention glass and looked through the first 30 reviews. 8 of those 30 reviews detail how the glass panel randomly shattered. That's over a quarter of the subset of reviews I looked at. This is a huge customer safety concern. This oven needs to be recalled and the consumers who purchased this oven need to be refunded. Frigidaire needs to be held accountable.

**Incident Date:** 11/3/2022

**Incident Location:** Home/Apartment/Condominium

120. On March 31, 2023 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FFEF3054TSR.[28]

**Incident Details**

**Incident Description:** The outside glass of my Frigidaire oven door spontaneously exploded. The oven was not on at the time of explosion. Our oven is only 1.5 years old and no visible damage before the explosion.

**Incident Date:** 3/28/2023

**Incident Location:** Home/Apartment/Condominium

121. On February 23, 2024 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FFEF3054TSK.[29]

---

[28] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4152979
[29] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4625459

**Incident Details**

**Incident Description:** the outer glass on my Frigidaire model FFEF3054TSK electric oven exploded when not in use causing lots of sharp glass to cover my kitchen.....The oven was turned off and the last use was around 2 hours before it exploded......Oven was purchased in April of 2020.... Injuries are cuts on hands from cleaning glass and sharp metal from taking door apart

**Incident Date:** 2/17/2024

**Incident Location:** Home/Apartment/Condominium

122. On February 8, 2024 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FCRE3052ASG.[30]

**Incident Details**

**Incident Description:** I started preheating my oven to cook biscuits and approximately 5mins the glass broke while I was close by. My husband and I both witnessed the glass break and was in total shock. We only owned our Frigidaire stove for 2yrs. I never seen anything like this happen and I could have gotten injured.

**Incident Date:** 2/6/2024

**Incident Location:** Home/Apartment/Condominium

123. On February 5, 2024 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FFEF3056TSD.[31]

[30] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4605680
[31] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4594406

**Incident Details**

**Incident Description:** On Jan 27, 2024 around 6am my family was scared awake by an explosion in our kitchen. The front tempered glass on our Frigidaire stove spontaneously exploded. The explosion was strong enough to send glass thirteen feet across the kitchen into my livingroom. The last time the stove was used was on Jan 24, 2024. I cut my finger while cleaning up the intact glass that was still stuck in the stove. I contacted Frigidaire on Jan 29,2024 and explained what happened. I asked to speak to a supervisor after being told they couldnt do anything. I was told that one would be in contact with me in 24 hours. I did not recieve a call or email back from Frigidaire.

**Incident Date:** 1/27/2024

**Incident Location:** Home/Apartment/Condominium

124. On June 25, 2024 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number LFEF3054TFQ.[32]

**Incident Details**

**Incident Description:** I own a fridgedaire Model #LFEF3054TFQ stove and I was in the living room working whenever the front glass of the stove burst out the front. It was not on that day, it had not been on for several days, nothing hit or damaged the door, no one was in the vicinity at the time of the front stove bursting out.

**Incident Date:** 6/4/2024

**Incident Location:** Home/Apartment/Condominium

125. On August 29, 2024 an incident report was filed with the CSPC and received by Electrolux concerning the Defect in one of its Ovens, model number FCRE305LAFD.[33]

---

[32] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4793818
[33] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4884294

**Incident Details**

**Incident Description:** We were using our Frigidaire electric oven of 4 years old to make pizzas. The oven was set at 425 degrees. Shortly after preheating we heard a loud bang that sounded like a gun shut as the front glass panel of the oven door exploded sending glass up to a foot away from the oven. We immediately turned the oven off and proceeded to clean up tiny pieces of glass for the next hour.

**Incident Date:** 8/23/2024

**Incident Location:** Home/Apartment/Condominium

126. As stated, the above incident reports are just a sampling of the Defect being reported to Electrolux, and its continued inaction and insistence on blaming the consumer, leaving the consumer with the expense and burden of repairing their defective Oven. There are hundreds more similar reports found on the CSPC site detailing consumers experiencing the Defect manifesting and more continue to be reported almost weekly.

127. In addition to Electrolux's knowledge of the Defect though it having received notice of CSPC reports for years, consumers have also left complaints about the Defect on Electrolux's own website for its products. Below is a sampling of the complaints left by consumers on its website further establishing that Electrolux has had knowledge of the Defect spanning years.



**Frigidaire 30" Electric Range**
FFEF3016VS

Overview | Appliance Support | New Owners | Support | Accessories | Specifications | Reviews | Contact

★☆☆☆☆

**Terrible**

Misty88

INCENTIVIZED REVIEW

2 years ago

I've had this oven for a year. I was in the kitchen the other day when suddenly the front glass of the oven door shattered into a million pieces. The oven wasn't on or hot. No one was near it (thank god!). It just shattered for no reason. The glass was popping off the floor for minutes afterwards like the glass was under so much pressure that was finally released. My 10 year old daughter cut her hand because glass had went six feet away into her tennis shoes. When she went to put them on the next day she cut herself. My two year old daughter was just a few feet away when It exploded. I called Frigidaire and they wanted to charge ME to send someone out to tell them yes it is broken. Like what?!? I'm a single mother who's a full time college student. That was a huge purchase for me and they want to treat me as well though I'm lying and make me pay for it.



Helpful? (1) (0) Report

///



**Frigidaire 30" Electric Range**
LFEF3054TF

Overview | Appliance Support | New Owners | Support | Accessories | Specifications | Reviews | Contact

★☆☆☆☆

Stove01

INCENTIVIZED REVIEW

a year ago

I purchased this item 7 months ago been trying to contact yall no one will respond or answer the glass explode after 6 months it is still under manufacturing warranty I need for yall to reach out to me asap thank you

Helpful? (0) (0) Report

///



**Glass exploded**

Lookitme123

4 years ago

The outer glass of the oven exploded while not even being used. I was sitting in my living room and sounded like a bomb went off. I came in the kitchen and glass was every where. Thank God my child or dogs weren't close. I called them and they explained to me it was one month out of the one year warranty and they won't do anything about it. Call a local technician they would be able to help me more. Buyer beware...



Helpful? (0) (0) Report

///



**Frigidaire 30" Electric Range**
FCRE305LAF

Overview Appliance Support New Owners Support Accessories Specifications Reviews Contact

**Glass shattered**

Cyn3

a year ago

Our inner (middle) glassed shattered within 18 months of purchase. We hardly use the oven (10-12 times since purchase at most) and when we do, we took care not to slam the door, place pots or pans on the glass, or subject it to extreme temperatures. The glass shattered with a loud noise while the oven was not even on and while we were in the other room. I called customer service to complain of this obvious manufacture issue and they said a service personnel visit would cost us $140 just to determine the defect since we were out of warranty. Terrible policy to have the customer pay for an investigation on Frigidaire's obvious manufacture flaw. Now we have to pay out of pocket to replace the glass, for an oven we hardly used. Poorly constructed with no support from the customer service end. Will not be purchasing from Frigidaire again.



Originally posted on 30" Electric Range

Helpful? (2) (0) Report

Response from Frigidaire: a year ago

Online Outreach Specialist

Oh my goodness, Cyn3! We're sorry to hear that the glass on your oven door shattered and would like to see what we can do to help.
Please be on the lookout for an email from us so that we can discuss further. ~Courtney



**Frigidaire 30" Electric Range**
FFEF3054TS

Overview | Appliance Support | New Owners | Support | Accessories | Specifications | Reviews | Contact

**RANDOM EXPLODING OUTER GLASS DANGEROUS**

Tiff88

5 years ago

Less than a year old . Fridgidaire gave me the run around with no results like I'm to blame. They won't fix it even though it's under warranty . The glass exploded/shattered by itself when not in use and we were in bed ..... I don't know why but it did . Made a huge POP and scared us . It could have really hurt someone had we been in the kitchen . Very upset , won't buy their products ever again

Design 1.0

Value 1.0

Features 1.0



Helpful? (0) (0) Report

///



**Frigidaire 30" Electric Range**
FCRE305LAF

Overview | Appliance Support | New Owners | Support | Accessories | Specifications | Reviews | Contact

**EXPLODING GLASS door**

exploded glass door

INCENTIVIZED REVIEW

4 years ago

New range: preheating to 440 heard an explosion in the kitchen found that the oven door main glass had exploded . It had to be bad glass from factory because you can not access the glass without taking the door apart. NOT COVERED UNDER 1 YEAR WARRANTY





Helpful? (0) (0) Report



**Frigidaire 30" Electric Range**
FFEF3054TS

Overview Appliance Support New Owners Support Accessories Specifications Reviews Contact

**Glass oven door shatters without warning or use!**

Walkerfam

a year ago

Our glass oven door exploded out words, shattering and causing a huge mess in our kitchen! No one was near the oven when it shattered, thank God! It could've cause serious injury if someone had been standing nearby. My husband did cut his hand on the glass as he was trying to clean up the huge mess. If we hadn't been home, our dog probably would've been injured investigating the mess, so we are thankful that we were here even though it scared us! Our oven is just two years old, and is not abused or misused in any way. We treat our appliances carefully and as recommended by the manufacturer. Apparently the glass is not under warranty, and the manufacture won't do anything to fix it, so we are out of pocket almost $200 for new glass. After doing some research, it seems like this is a fairly common occurrence for these ovens. I found many news reports over just the past year, describing the same kind of incident happening to other peoples' ovens, and the manufacturer refuses to take any responsibility. We know this is not an isolated incident. I would not recommend anyone buy a Frigidaire oven!





Helpful? (1) (0) Report

Response from Frigidaire: a year ago

Online Outreach Specialist

We are sorry to learn that this has been your experience with your oven; this is certainly not the type of ownership we aim for you to have. We are relieved that no one was harmed in this incident. Unlike regular glass, tempered glass may break when exposed to continuous stress. Unfortunately, microcracks resulting from stress are not always noticeable — until the glass is no longer able to cope and shatters into tiny pieces. Any impact on your oven glass can contribute to these microcracks. Resting pots on the glass, closing the door without the racks fully pushed in, slamming the door, or bumping into it are just a few possibilities that could cause micro-cracks over the years. This is not a manufacturing defect. Please know that it is Frigidaire's goal to use some of the finest quality materials available and sophisticated assembly processes to assure manufacturing accuracy. Although we place a great deal of emphasis on manufacturing quality products, there are occasions when things may not go as they should. We want you to know that you, as a customer, matter to us, and we are going to do our best to assist you. We value all feedback, as it can help with future products. Knowing what is most important to our family only helps us design more products with a better understanding of what is needed for you. Should you have further concerns that we may be able to assist with, you can contact us by live chat or by phone at 1-800-374-4432. Monday through Friday, 8:30 a.m. to 8:00 p.m. EST, and we will be happy to assist. -Rox

///



Frigidaire 30" Electric Range
FFEF3054TS

Overview Appliance Support New Owners Support Accessories Specifications Reviews Contact

**Glass Break!**

kebrown

INCENTIVIZED REVIEW

5 years ago

I have never in my life seen a glass just shatter out of no where! The stove was not on. We had this product for only 1 year. Glass all over a wood floor!

No, I do not recommend this product.

Helpful? (0) (0) Report

Design 3.0
Value 1.0
Features 3.0

Response from Frigidaire: 5 years ago

Online Outreach Specialist

Hi, kebrown.

I appreciate you for stopping by and sharing your experience.

I am sorry to learn about the matter with your oven's door. I'm glad to hear the recent issue did not cause extensive damage and no one in your family was injured. We are always concerned about the safety and wellbeing of our consumers.

Though no manufacturer can guarantee against repairs or service visit with any of their models, I feel awful about the experience you have encountered recently with your range.

I am pleased our Customer Care Team, and authorized service provider was able to pinpoint the issue you were experiencing and resolve the issue as quickly as possible.

We appreciate your patience with us and will be happy to use your experience for future reference.

Should you need us, we can be reached at 800-374-4432. Our Customer Care Team is available Monday through Friday from 8:30am-8pm EST. Or, you may send an email to socialcare@frigidaire.com.

Best Regards-
Derrick

///



Frigidaire 30" Electric Range
FFEF3054TS

Overview Appliance Support New Owners Support Accessories Specifications Reviews Contact

★★☆☆☆

**Worked Great Until Yesterday**

billeg

3 years ago

Exploding External Oven Glass Door For the past 2 1/2 years, our Frigidaire electric oven has had no issues. That is, until yesterday. For no apparent reason, our Frigidaire Oven front glass door exploded into a thousand pieces. Thank goodness, it was tempered glass. Of course, the warranty is only for one year. Very disappointed. And we have 4 other Frigidaire appliances in our house. I can understand warranties cannot run forever, but defects in workmanship should be longer than one year. Again, other than this door issue, the appliance has functioned properly and we have had no issues.

Helpful? (0) (0) Report

///



Frigidaire 30" Electric Range
FFEF3054TS

Overview Appliance Support New Owners Support Accessories Specifications Reviews Contact

★☆☆☆☆

**Front door glass shattered for no reason..now ove.**

Slb630

5 years ago

I bought this oven 14 months ago...front outside oven glass shattered for no reason. Oven wasn't even on...now oven won't work nor left front burner...14 months shouldn't have these problems and only 12 month warranty .???????? Been on hold for an hour trying to get help

No, I do not recommend this product.

Originally posted on 30" Electric Range

Helpful? (0) (0) Report

Design 1.0

Value 1.0

///



**Frigidaire 30" Electric Range**
FFEF3054TS

Overview | Appliance Support | New Owners | Support | Accessories | Specifications | Reviews | Contact

★☆☆☆☆

**not happy**

unhappy stove

5 years ago

Don't use stove often and haven't had it but little over a year. The glass top scratches too easily and came home to broken glass all over the floor from door.. nothing was near to hit it or fall against it. replacement door cost $65- should not have to replace door this soon and have never had this happen to other stoves.

Design 4.0

Value 1.0

Features 4.0

No, I do not recommend this product.

Originally posted on 30" Electric Range

Helpful? (0) (0) Report

Response from Frigidaire: 5 years ago

Online Outreach Specialist

Hello, Valued Consumer.

We appreciate your review.

I am sorry to learn about your experience with your range. I am thankful you or anyone in your household was not seriously injured.

Please keep in mind many factors such as environment, or usage may play a role with the tempered glass being shattered.

To help prevent scratches and abrasions we recommend applying a ceramic cooktop cleaning cream (available in most hardware, grocery and department stores or try our ReadyClean™ Glass and Ceramic Cooktop Cleaner) to the ceramic surface. Clean and buff with a non-abrasive cloth or pad. This will make cleaning easier when soiled from cooking.

Our ReadyClean™ Glass and Ceramic Cooktop Cleaner leaves a protective coating that repels dust and dirt.

https://www.frigidaire.com/Filters--Accessories/Cleaning-Accessories/5304508690/

Should the above suggestion prove ineffective, please give us a call or reconnect by sending an email to socialcare@frigidaire.com. Our Customer Care Department can be reached by dialing 800-374-4432 and available Monday through Friday from 8:30 am-8pm EST.
Regards-Derrick

///



Frigidaire 30" Electric Range
FFEF3054TS

Overview Appliance Support New Owners Support Accessories Specifications Reviews Contact

**Front Glass Door exploded after 2+yrs**

rtdelolmo

4 years ago

We purchased a home that was 2yo (2020) and by my calculations the range should be about 2.5yo. Last night we heard an explosion and the front door glass exploded across our kitchen. We have an open concept home so the glass fragments went everywhere. Luckily no one from my family were not in the room at the time. I have rented places for longer with ranges much older and have never experienced something so dangerous. I have always heard Frigidaire to be a really great product, unfortunately our product was not.

Helpful? (0) (0) Report

///



Frigidaire 30" Electric Range
FFEF3054TS

Overview Appliance Support New Owners Support Accessories Specifications Reviews Contact

**Great until it exploded**

djcjr

2 years ago

This oven worked great until it exploded 4 years into its life. The front glass on the door completely blew off and littered our kitchen with glass. Frigidaire said it was out of warranty and told me to pound sand. This isn't a question about warranty; this is a manufacturer's defect and the oven was faulty to begin with if the door exploded.

Helpful? (1) (0) Report

///



**Frigidaire 30" Electric Range**
FFEF3054TS

Overview | Appliance Support | New Owners | Support | Accessories | Specifications | Reviews | Contact

**Do not purchase this product**

Nausetchevy

a year ago

I purchased a Frigidaire 30 Electric range. The oven glass door exploded glass all over my kitchen and Frigidaire will not even answer calls, emails, or chats on their website. I am beyond mad at this point. The appliance store where I purchased the range said that this isn't the first case they've heard of with a Frigidaire oven glass door exploding.

Helpful? (0) (0) Report

///



**Frigidaire 30" Electric Range**
FFEF3054TS

Overview | Appliance Support | New Owners | Support | Accessories | Specifications | Reviews | Contact

**Shattering glass while cooking**

Holly555555

a year ago

Our range is 4 years old and a few days ago, we were heating up food on a low temp (250 F) and the front window glass suddenly exploded. We have only used it for cooking, never used the self-clean mode. I read they switched from using borosilicate to tempered glass, which is weaker, and sometimes it breaks even if using normally and sometimes breaks when the oven is not even on. I would not buy it again due to this issue.



Helpful? (0) (0) Report

///



**Frigidaire 30" Electric Range**
FFEF3054TS

Overview | Appliance Support | New Owners | Support | Accessories | Specifications | Reviews | Contact

★☆☆☆☆

**Oven door glass shattered**

Donarae

3 years ago

The stove came with my new home 1 year ago. (Stove was brand new with home) Last night without warning, while the stove was set to 325 degrees, the outer glass exploded and shattered. I have never seen anything like this before.





Helpful? (0) (0) Report

Response from Frigidaire: 3 years ago

Online Outreach Specialist

Oh no, Donarae!

I apologize that this has been your experience with your range and thank you for bringing it to our attention.

Please know that we make every effort to ensure our consumers have the best experience and I have reached out to you via email pertaining to your concern to see how I can help, so please be on the lookout for an email from me.

Kindly,
Ciara

///



Frigidaire 30" Electric Range
FFEF3054TS

Overview Appliance Support New Owners Support Accessories Specifications Reviews Contact

★☆☆☆☆

**Never again - oven door glass shattered**

kate918

3 years ago

We had this unit for 3 years. Recently we used the oven to cook dinner. It was off for about 90 minutes and we were in another room when we heard something shatter. We came out to find the front panel glass shattered all over our kitchen floor. Luckily no one was in the room. The front door had recently been cleaned and we had not seen any evidence of cracks, dings, or other imperfections in the glass. Quick search and post online and found others who experienced similar issues with Frigidaire products. I called Frigidaire and they were NO HELP. They could not identify what would have caused the issue, could not assure me it would not happen again, not willing to cover any of the damages. Will never buy another Frigidaire product - their customer service is terrible and their products don't seem to hold up to well. Cannot risk another incident like this, especially with small children in the house.



Helpful? (0) (0) Report

Response from Frigidaire: 3 years ago

Outreach Social Specialist

Hi Tiffany! This is certainly not the experience we like to hear about. I do want to assure you that we're on your side, and ready to help. Please be on the lookout for an email from us. We'll be happy to help!
~Corletta

///



Frigidaire 30" Electric Range
FFEF3054TS

Overview Appliance Support New Owners Support Accessories Specifications Reviews Contact

★☆☆☆☆

**Oven glass exploded**

Tcarre02

2 years ago

Last night our oven glass exploded and completely shattered. We were not using the oven at the time. I'm truly disappointed in the fact that Frigidaire is making us pay out of pocket for the technician and repair when this was completely spontaneous. We bought our stove back in the summer of 2019 and expected better quality for the amount we paid. We were just lucky that our 2 year old was not awake when this happened as it took forever to clean up and could have seriously injured someone. Won't be buying Frigidaire appliances in the future.





Helpful? (1) (0) Report

///



Frigidaire 30" Electric Range
FFEF3054TS

Overview Appliance Support New Owners Support Accessories Specifications Reviews Contact

★☆☆☆☆

**Shattered Glass ... Broken Dreams**

Dangerous

a year ago

I can not ever recommend this product for the following reason. Purchased this product from local HD store May 2, 2022. Today is May 26, 2023 (1 year and 24 days later) and the outside oven glass shattered while the oven was off. Thankfully no one was around to get hurt. Glass went everywhere. Repairs are not an option since it wasn't mechanical or electrical as we were told by warranty company. Reading the reviews that are 1's and 2's where we purchased this appliance, looks like we are not the only ones. Frigidaire, there should be a recall!





Helpful? (1) (0) Report

Response from Frigidaire: a year ago

Online Outreach Specialist

We're disheartened to learn that this has been your experience with your appliance. This is definitely not the ownership experience we strive for you to have. Unlike regular glass, tempered glass may break when exposed to continuous stress. Unfortunately, microcracks resulting from stress are not always noticeable until the glass is no longer able to cope and shatters into tiny pieces. Any impact on your oven glass can contribute to these microcracks. Resting pots on the glass, closing the door without the racks fully pushed in, slamming the door, or bumping into it are just a few possibilities that could cause micro-cracks over the years. This is not a manufacturing defect. Please know that our design and engineering teams are constantly monitoring our brand pages for feedback and experiences, such as yours, for future reference. Should you need further assistance, please reach out to us at 1-800-374-4432. Monday through Friday, 8:30 a.m. to 8:00 p.m. EST, and we will be happy to assist. -Rox

///

128. In addition to Electrolux's knowledge of the Defect though it having received notice of customer complaints for years on its own website, consumers have also left complaints about the Defect on authorized seller's websites such as Home Depot. Below is a sampling of the complaints left by consumers on the Home Depot

website further establishing that Electrolux has had knowledge of the Defect spanning years, and additional complaints are attached to this complaint as Exhibit A.

Model # FCRE3052AS[34]

★☆☆☆☆ Jan 30, 2021

**Glass in oven door shattered**

[This review was collected as part of a promotion.] I bought this a month ago and was not able to use for two weeks as the oven door shattered after two weeks

by PopPopalready used

FRIGIDAIRE
Customer review from frigidaire.com

**Response from Online Outreach Specialist** Hide

Feb 10, 2021

Oh no! We are terribly sorry to hear about your experience. It does sound as though the matter has since been resolved. This is not the ownership you should have experienced or expected. Should you need assistance or have questions in the future, our Live Chat Team is available on Frigidaire.com or you may call 1- 800-374-4432 Mon - Fri, 8:30am - 8pm (EST). Best Wishes, Anna

★☆☆☆☆ Jan 18, 2023

Verified Purchase

**I had the oven for less than a week when...**

I had the oven for less than a week when the glass inside "exploded" all over my food inside and onto the kitchen floor. That was 2 weeks ago and Frigidaire still hasnt resolved. They said they would replace the glass and have cancelled my appts to do so twice. They refuse to provide a refund or send me a new oven so I have paid for an oven/stove and have not been able to cook now for 2 weeks....terrible "customer service"

by LANA

**Response from FrigidaireSupport** Hide

Jan 18, 2023

Hi there! We appreciate your frank feedback. Your happiness and safety are our top priority! We like to learn more about your experience. When you have a moment, please send us a quick note via our email socialcare@frigidaire.com, along with your range's serial and model number. We look forward to hearing from you! -Derrick

FRIGIDAIRE

---

[34] https://www.homedepot.com/p/Frigidaire-30-in-5-Burner-Element-Freestanding-Electric-Range-in-Stainless-Steel-FCRE3052AS/310575855

★☆☆☆☆ Jul 17, 2020

**EXPLODING GLASS door**

[This review was collected as part of a promotion.] New range: preheating to 440 heard an explosion in the kitchen found that the oven door main glass had exploded . It had to be bad glass from factory because you can not access the glass without taking the door apart. NOT COVERED UNDER 1 YEAR WARRANTY

by exploded glass door





FRIGIDAIRE
Customer review from frigidaire.com

Helpful?

★☆☆☆☆ Feb 23, 2024



**Stay away from Frigidaire!!!**

Oven door just exploded while oven was not in use. I was away from home and my kids called me panicking as it was so loud. Tried to get some explanation from Frigidaire but to no avail since the stove is out of warranty and they don't want to claim any responsibility saying that when it happens it is customer's fault. Whole correspondence lasted for about a month and, meanwhile, my microwave died and dishwasher leaked. All Frigidaire, all purchased at the same time (5 years ago). Safety hazard!

by Maki

**Response from FrigidaireSupport** Hide

Feb 26, 2024

Hello Maki,

Thank you for taking time to provide us your review and experience! and Thank you for bringing this up to our attention! We understand the unfavorable reviews you have seen regarding our appliances. We do read reviews on our appliances and take every inquiry very seriously and handle each concern on a case-by-case basis. We're sorry to hear you feel this way, we strive to ensure, we provide the best experience possible for our consumers. We would adore the chance to see how we can contribute to the resolution of this issue. To discuss this further. Please don't hesitate to connect with us via Live Chat at www.frigidaire.com or call us at 1-800-374-4432, Monday-Friday, 8:30 a.m.–8 p.m. EST, and we'll be happy to assist.

- Owen

FRIGIDAIRE

Feb 29, 2024

**STAY AWAY**

This range came with our new build. Was cooking one night and the glass shattered, several news articles show that 1000s of customers have had this experience. Frigidaire refuses to cover this in their warranty - and while I even had customer service rep acknowledge that this was a result of manufacture defect, they refuse to fix it. Do NOT buy!
by Drew



**Response from FrigidaireSupport** Hide

Mar 4, 2024

Oh, no! We're sorry to hear you feel this way, Drew. This is a big disappointment for a valued customer like you. We're hoping to put things right. It makes sense that having high-quality goods and excellent customer service are vital. We want to make sure you get the proper care and support from us. At your convenience, please connect with us via phone at 800-374-4432, Mon-Fri, 8:30 a.m.–8:00 p.m. EST, and we will be happy to assist. ~Ruth

FRIGIDAIRE

Mar 4, 2024

**Safety Recall Should Be Issued**

2/ 23/24 front glass exploded/popped & caused minor superficial cuts. Range was operated with normal use per manufacturer details & inoperable for about 72hrs prior. Warranty is out. Glass is $139.99 plus service fee from authorized service agent. Frigidaire rep (Mary D) states they prioritize safety & that the oven & glass top may still be operated. We feel unsafe using the product but will manage using the glass top per rep safety assurance and need to cook! Will contact risk mgnt dept.
by AverageNeighbor








**Response from FrigidaireSupport** Hide

Mar 6, 2024

Hi there, valued customer! Thank you for making time to provide us with your feedback. We are saddened to know that this has been your experience. Please know that we never want our consumers safety to be at risk. We want to make sure that you are getting all the assistance you need,
feel free to contact us at 1-800-374-4432. Monday through Friday, 8:30 a.m. to 8:00 p.m. EST, we'll be happy to assist. - Jessica

FRIGIDAIRE

Jan 21, 2024



**Glass door shattered when off. Unacceptable**

Happy with Home Depot but will never buy this brand of appliance again. Horrible to wake up in morning to find shattered glass everywhere from door and oven was not in use. Paid $900 plus and only 1.5 years old?! Unacceptable!!!!

by Suzie

**Response from FrigidaireSupport** Hide

Jan 22, 2024

Hello, Suzie! We know this can be scary when this happens to your range, and we want you to know that we are here to help. Please know this is not the effortless experience we strive for, and if you give us a chance, we would like the opportunity to investigate your concerns further to properly assist you. At your convenience, connect with us via Live Chat or call us at 1-800-374-4432, Monday-Friday, 8:30 a.m.–8 p.m. EST, and we'll be happy to assist. ~Sam

FRIGIDAIRE

Aug 12, 2024

Recommended





**One year Use- Oven outer glass exploded.**

Heads up. Bought my oven last summer and the outer glass spontaneous exploded. Currently, on the phone with customer service of course it's one month passed the 1 year warranty. There's not a recall yet for this but it seems like a common issue an been on some various local news. I'm used to ovens lasting for several years before something like this happens.

by Keith

**Response from FrigidaireSupport** Hide

Aug 12, 2024

We appreciate you stopping by to share your feedback with us and bringing your concerns to our attention. It was an uncommon instance. We'd like to learn more about your specific situation and make things right. At your convenience, please don't hesitate to connect with us via Live Chat at www.frigidaire.com or call us at 1-800-374-4432, Monday-Friday, 8:30 a.m.–8 p.m. EST, and we'll be happy to assist.

-Christian

FRIGIDAIRE

Dec 6, 2024

**Glass window spontaneously shatters;fine otherwise**

The oven heats evenly and accurately. When using the oven, the stovetop surface gets very hot. Not warm--hot as in food will cook, you'll burn your hand (I've ensured that the oven vents are open). I've had this range for three years, and the outer glass window on the oven door shattered when no one was in the room. Since it's no longer under warranty I had to purchase the part and will install it myself when it arrives. Do a quick search, this is a common issue with this ranges.

by Jessica







**Response from FrigidaireSupport** Hide

Dec 9, 2024

Thank you for taking the time to write a review for us. We pride ourselves on our high-quality standards and regret that our product has not lived up to your expectations. We want you to know you as a customer, and your situations matter to us, and we are going to do our best to assist you. We'd like to learn more about your specific situation to see how we can help. At your convenience, please don't hesitate to connect with us via Live Chat at www.frigidaire.com or call us at 1-800-374-4432, Monday-Friday, 8:30 a.m.–8 p.m. EST, and we'll be happy to assist. -Chris

FRIGIDAIRE

Dec 27, 2024

**Outer Glass shattered in the middle of night**

Glass shattered in the middle of the night sounding like a loud crash. I purchasing appliance in November 2022. Will reach out to the manufacturer to see what can they do for me. After some research, I'm showing that a lot of people are getting rejected by the manufacturer owning up to the defective units.

by Bricks





**Response from FrigidaireSupport** Hide

Dec 30, 2024

We know this can be scary when this happens to your oven, and we want you to know that we are here to help. At your convenience, please don't hesitate to connect with us via Live Chat at www.frigidaire.com or call us at 1-800-374-4432, Monday-Friday, 8:30 a.m.–8 p.m. EST, and we'll be happy to assist. -Chris

FRIGIDAIRE

Jun 15, 2025



**Glass Shattered**

We have owned this oven for less than 2 years. It has worked great and looks nice. However, the front glass shattered a few days ago. We are very thankful nobody got hurt, but do better Frigidaire.

by AB0718

**Response from FrigidaireSupport** Hide

Jun 17, 2025

Thank you for sharing your experience with us. We're relieved to hear that no one was hurt when the front glass shattered. We understand how concerning this must be, and we sincerely apologize for the inconvenience.

To assist you further, please reach out to us directly. You can connect with our support team through Live Chat at Frigidaire.com or call us at 1-800-374-4432, Monday through Friday, from 8:30 am to 8:00 pm EST. We appreciate your feedback and are committed to improving our products and customer experience. - Maria

FRIGIDAIRE

---

Apr 16, 2021

**Shattered Glass**

I bought this Range brand new and 18 months later, the glass from the oven shattered while the oven was turned off. The oven was not used today. I have children in the home and would have been injured if I wasn't there to tell them to stay away from the glass.

by King

Helpful?

---

Jul 6, 2022

**Oven door exploded!**

[This review was collected as part of a promotion.] We hadn't used the oven in roughly 12 hours. We cooked a standard dinner on the cook top, steak, shrimp, and corn on the cob, nothing out of the ordinary or crazy in temperature. Then about 30-45 minutes after turning off the STOVE (not the oven) we heard a loud BANG followed by the sound of broken glass. The front pane of the oven had seemingly spontaneously combusted and frigidaire seemed more concerned with attempting to blame us than address the issue. Asking us things like do we slam our oven door shut and tons of other silly questions. Like, no, we don't. We weren't even using the thing. I can't imagine if this would have happened while we werent home or asleep. My poor dogs could have trampled through pounds of broken glass or my kids could have woke up to get water and stepped through a mine field of glass shards...

by Tony Canoli

Model # FCRE3052BS[35]

★☆☆☆☆ Mar 15, 2025

**Unsafe Oven**

[This review was collected as part of a promotion.] We've had this oven for a few years. While I've had no issues with the oven or stove top cooking food correctly and as expected, I was in for a surprise. Last night I heard what sounded like a gun shot and glass shattering. I ran into the kitchen and our oven door had shattered completely and glass was everywhere. The oven was NOT turned on and hadn't been used all day. We have ceramic tile and the glass really flew around the room. The sound woke up my two kids, who thank god weren't awake to get injured. I spent the good part of my evening getting my son back to sleep and then cleaning up shards of razor sharp glass. While it worked for the three years we've had it in giving it 0/10 as my kids could have been seriously injured and now I need a new oven.

by SarahB216



FRIGIDAIRE

Customer review from frigidaire.com

**Response from Online Outreach Specialist** Hide

Mar 19, 2025

We know this can be scary when this happens to your oven, and we want you to know that we are here to help. At your convenience, please don't hesitate to connect with us via Live Chat at www.frigidaire.com or call us at 1-800-374-4432, Monday-Friday, 8:30 a.m.–8 p.m. EST, and we'll be happy to assist. Best Regards, -Christian

★☆☆☆☆ Mar 31, 2025

**Beware of tempered glass**

Outside glass on oven door exploded (no hyperbole, I ran for the kitchen expecting to see where my kitchen was due to the sound) when not in use, which was a blessing because I have a habit of looking thru the door when baking. Installed in December, shattered in January and I'm still trying to get the replacement. Unusable until replacement has been installed. Don't buy ANY full glass front appliances since the tempered glass fault rates seem to be going up and up.

by Anon





**Response from FrigidaireSupport** Hide

Apr 2, 2025

Hello, Anon! We are truly sorry to hear about your experience with the oven door, and we completely understand how alarming and frustrating that must have been. Safety is our top priority, and we're relieved to hear that you weren't in harm's way when it happened. It's certainly concerning that you've been dealing with this issue for so long, and we apologize for the delays in getting your replacement installed.

We truly appreciate your feedback about full glass-front appliances, and we'll be sure to share it with our team. If you need any assistance, please join us via Live Chat at www.frigidaire.com or call our Customer Care Team at 1-800-374-4432. Monday through Friday, 8:30 a.m. to 8:00 p.m. EST, and we will be happy to assist in any way we can. - Patrick

FRIGIDAIRE

[35] https://www.homedepot.com/p/Frigidaire-30-in-5-Burner-Element-Freestanding-Electric-Range-in-Stainless-Steel-with-Dual-Expandable-Element-and-Quick-Boil-FCRE3052BS/327655800

Model # FCRG3052AS[36]

★☆☆☆☆ Jan 30, 2021

**Glass in oven door shattered**

[This review was collected as part of a promotion.] I bought this a month ago and was not able to use for two weeks as the oven door shattered after two weeks

by PopPopalready used

FRIGIDAIRE
Customer review from frigidaire.com

**Response from Online Outreach Specialist** Hide

Feb 10, 2021

Oh no! We are terribly sorry to hear about your experience. It does sound as though the matter has since been resolved. This is not the ownership you should have experienced or expected. Should you need assistance or have questions in the future, our Live Chat Team is available on Frigidaire.com or you may call 1- 800-374-4432 Mon - Fri, 8:30am - 8pm (EST). Best Wishes, Anna

★☆☆☆☆ May 3, 2021

**Oven glass broke while cooking in the oven for the...**

Oven glass broke while cooking in the oven for the second time

by JASON

**Response from FrigidaireSupport** Hide

May 5, 2021

Oh my, JASON! We're sorry to hear that the glass has broken for the second time and would like to see how we can assist. At your convenience, please take a moment to chat with us at frigidaire.com or contact us directly at 1-800-374-4432; Monday through Friday from 8:30am to 8:00pm EST, to see what solutions we might have to resolve your issues. Thank you, Courtney

FRIGIDAIRE

★☆☆☆☆ Mar 31, 2021

**Glass oven door spontaneously shattered**

[This review was collected as part of a promotion.] Perfectly adequate until the glass on the oven door shattered 8 months in. Luckily dinner was one minute away from done.

by Crunchy



FRIGIDAIRE
Customer review from frigidaire.com

[36] https://www.homedepot.com/p/Frigidaire-30-in-5-Burner-Freestanding-Gas-Range-in-Stainless-Steel-FCRG3052AS/310575941

★☆☆☆☆ Jun 15, 2021

**over door exploded**

we received this stove last friday (today is Tuesday) and used the stove top once or twice and the oven once. Today I had just put some chicken wings in the oven and the door exploded. The oven was on less than 10 minutes at 400 degrees. This is on top of HORRIBLE service from Home Depot in even getting this appliance. Because it's more than 48 hours they are telling me they will not take it back. Now what do I do with literally no appliance at all and no solution from Home Depot?

by TF





129. The above complaints show Defendant had knowledge of the Defect for many years. Moreover, many of these complaints were responded to by Electrolux customer service employees, revealing that Defendant was monitoring its website and keeping track of customer complaints. As such, Defendant's knowledge of the continued existence of the Defect in its Ovens is clear.

130. Because of its knowledge of the Defect, Defendant has a duty to disclose the Defect and to not conceal it from consumers. Defendant's failure to disclose, and/or active concealment of, the serious safety Defect places Plaintiff and the public at an unreasonable and unnecessary risk of personal injury and/or property damage.

131. Defendant still markets and sells the Ovens, still conceals the existence of the Defect, still fails to notify consumers of the Defect and its safety implications, still fails to recall the Ovens, and still fails to cover the cost of replacing the glass once it breaks or shatters if it is outside of the one-year warranty period, despite the fact that the Defect exists at the time of sale.

132. When Defendant repairs the Ovens after the glass breaks or shatters, it fails to properly attribute the failure to the Defect, and merely replaces the defective glass door with an identical, equally defective part, which does not prevent the recurrence of the issue.

**d. Unconscionability and Failure of Essential Purpose of the Warranty**

133. The warranty relating to the Ovens are unconscionable as follows:

a. Electrolux knew or should have known of the Defect in Frigidaire branded Ovens featuring a glass-front door made with soda lime glass and containing nickel sulfide inclusions, prior to and at the time of sale of the Ovens to consumers, including from its pre-sale product testing, the hundreds or more consumer complaints to the CPSC, which were directly reported to Electrolux, as well as from the consumer complaints and warranty claims made directly to Electrolux, and the numerous consumer complaints posted to third party, authorized retailers website and responded to by Electrolux;

b. Electrolux was in a superior position to know of, remedy and disclose the Defect in its Ovens to Plaintiff, who could not have known of the Defect at the time of purchase;

c. Plaintiff and Class Members had no ability to negotiate the terms of the warranty, including the durational time limitation or disclaimers contained therein;

d. Plaintiff and Class Members had no meaningful choice in the terms of the warranty, including the durational time limitation or disclaimer contained therein;

e. Plaintiff and Class Members had no meaningful choice in choosing another brand of oven, as any other reputable brand would likewise have warranties containing the same or similar terms and limitations;

f. There was a substantial disparity between the parties' bargaining power such that Plaintiff were unable to derive a substantial benefit from the warranties. A disparity existed because Electrolux was aware that the Ovens were inherently defective due to its exclusive and superior knowledge of the Defect from pre-sale product testing, Plaintiff and Class Members had no notice or ability to detect the Defect, Electrolux knew Plaintiff and Class Members had no notice or ability to detect the Defect, and Electrolux knew that Plaintiff and Class Members would bear the cost of correcting the Defect. This disparity was increased by Electrolux's knowledge that failure to disclose the Defect would substantially limit the Oven's use and could cause it to fail altogether;

g. Electrolux failed and refused to extend the time limitation of the warranty to cover the Defect, which was known to Electrolux and unknown to consumers at the point of sale;

h. Plaintiff and Class Members had no ability to discover the Defect at the time of sale;

i. The one-year durational limit on the warranty is grossly inadequate to protect Plaintiff and Class Members from the Defect;

j. Electrolux sold the Ovens with knowledge of the Defect and of the fact that it may not manifest until after expiration of the one-year warranty;

k. Electrolux sold the Ovens with knowledge of the Defect and of the fact that the Ovens would fail well before the expiration of their useful lives;

l. Electrolux sold the Ovens knowing that they were not capable of being repaired or replaced with non-defective glass within a one-year warranty period, or thereafter;

m. Plaintiff and Class Members would have negotiated better terms in the purchase of their Ovens and warranties had they been aware of the Defect; and

n. The terms of the warranty unreasonably favor Electrolux over Plaintiff and Class Members.

134. In addition, the warranty fails of its essential purpose in that Electrolux is unable to repair the Defect because it is only able to replace the shattered glass with identical, equally defective Ovens and/or glass. To the extent that Electrolux offered to replace, or did replace, the defective Ovens or glass, the warranty of replacement fails in its essential purpose given it is insufficient to make Plaintiff and Class Members whole because the warranty covering the Ovens gives Electrolux the option to replace the Ovens and/or glass with identical, equally defective Ovens and/or glass. Specifically, in its course of business, when Electrolux opts to provide a replacement Oven or glass to complaining consumers, the replacement Oven or glass likewise contains the Defect, resulting in the same safety risks to the owners, and the same or similar damages can occur to the replacement Ovens and the owner's personal property. Accordingly, recovery by Plaintiff and Class Members is not restricted to the promises in any written warranties, and they seek all remedies that may be allowed.

135. Defendant has been put on notice of the Defect as detailed herein. Additionally, Plaintiff sent a pre-suit demand letter to the Defendant detailing the Defect and seeking a class-wide remedy of the Defect. Defendant has declined to provide a class-wide remedy of the Defect.

**e. Fed. R. Civ. P. 9(b) Allegations (plead in the alternative)**

136. As detailed herein, Plaintiff's claims here focus on material omissions, not affirmative misrepresentations. Accordingly, Rule 9(b) should not apply to Plaintiff's claims.

137. Should the Court nonetheless apply Rule 9(b), a relaxed pleading standard accommodates the difficulties with pleading omissions rather than affirmative statements; "[l]ike Sherlock Holmes' dog that did not bark in the night, an actionable omission obviously cannot be particularized as to the time, place and contents of the false representations or the identity of the person making the misrepresentation." *Cohan v. Pella Corp.*, 2015 U.S. Dist. LEXIS 144794, at *10 (D.S.C. Oct. 26, 2015).

138. Accordingly, to the extend the Court determines that Rule 9(b) should apply here – it should not – Plaintiff makes the following allegations.

139. Although Electrolux is in the best position to know what content it placed on its website(s) and in marketing materials during the relevant timeframe, and the knowledge that it had regarding the Defect and its failure to disclose the Defect to consumers, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

140. *Who*: Electrolux omitted material fact from its website representations, warranties, owner's manuals, labeling and marketing, statements and representations

made by employees receiving warranty claims, and from its statements and representations made by its authorized retailers and servicers of the Ovens; all of the foregoing omitted the facts the Ovens were defective, were not high-quality, were not suitable for their purpose of cooking and heating food, and would not last as long, as the average service life of any comparable oven.

141. *What*: Electrolux's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Ovens are defective, are constructed with unsuitable soda lime glass, manufactured with impurities of nickel sulfide, which could break or shatter, causing personal injury and/or property damage to Plaintiff and Class Members, were not of high-quality, could present a safety hazard when being used as intended, and could fail prior to the completion of their expected useful life. Electrolux's employees and authorized agents and representatives failed to disclose to Plaintiff and Class Members regarding the same qualities. Further, Electrolux's conduct deceived Plaintiff and Class Members into believing that the Ovens are not defective, are high-quality, are safe to use, and will last at least as long as the full duration of their expected useful life. Electrolux knew or should have known this information is material to reasonable consumers, including Plaintiff and Class Members in making their purchasing decisions, yet it omits any warning that the Ovens suffer from the Defect. No reasonable consumer would expect the glass in their Ovens to shatter when using their Ovens in a reasonably foreseeable manner.

142. *When*: The material omissions detailed herein were made prior to and available at the time Plaintiff and Class Members performed research on the Ovens to gather information that would aid them in selecting the best oven to purchase; prior to and at the time Plaintiff and Class Members purchased the Ovens, prior to and at the time Plaintiff and Class Members made claims after the glass broke or shattered, and continuously throughout the applicable Class periods.

143. *Where*: Electrolux's material omissions were made on its website(s), through marketing materials, in warranties, in user manuals, on the labeling of the packaging, as well as through statements made by its employees and authorized retailers.

144. *How*: Electrolux failed to disclose material facts regarding the Defect and true safety risks of normal use of the Ovens in written form, electronic form, or conventional hardcopy form, as well as verbally through statements made by its employees and authorized retailers.

145. *Why*: Electrolux made the material omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Ovens, the effect of which was that Electrolux profited by selling the Ovens to many thousands of consumers.

146. *Injury*: Plaintiff and Class Members purchased or paid more for the Ovens when they otherwise would not have absent Electrolux's material omissions.

Further, the Ovens continue to pose unreasonable safety risks and cause consumers to incur unnecessary and unreasonable out-of-pocket expenses when manifestation of the Defect occurs.

## CLASS ALLEGATIONS

147. Plaintiff brings this action individually and as representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of the individuals in the below-defined class (collectively, the "Class Members"):

**Nationwide Class:**

During the fullest period allowed by law, all persons residing in the United States who own or owned a Frigidaire Oven (the "Nationwide Class").

**Virginia Subclass**:

During the fullest period allowed by law, all persons residing in the State of Virginia who own or owned a Frigidaire Oven (the "Virginia Subclass").

148. Specifically excluded from the Class definition are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

149. Plaintiff seeks only damages and equitable relief on behalf of herself and the putative Class. Plaintiff disclaims any intent or right to seek any recovery in this

action for personal injuries or emotional distress suffered by Plaintiff and/or putative Class Members.

150. Plaintiff reserves the right to modify the class definitions, if necessary, to include additional appliances with the same Defect.

151. **Numerosity**: Class Members are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of thousands of people geographically disbursed throughout the United States. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. Class Members are readily identifiable from information and records in the possession of Defendant and its authorized distributors and retailers.

152. **Commonality**: Common questions of law and fact exist as to all Class Members. These questions predominate over questions that may affect only individual Class Members because Defendant acted on grounds generally applicable to all Class Members. Such common legal or factual questions include, inter alia:

(a) Whether the glass used in the Ovens is defective;

(b) Whether the Ovens have a flaw in materials and/or workmanship;

(c) Whether Defendant knew or reasonably should have known about the defective glass used in the Ovens prior to distributing and selling the Ovens to Plaintiff and Class Members;

(d) Whether Defendant knew or reasonably should have known about the defective glass used in the Ovens after distributing and selling the Ovens to Plaintiff and Class Members;

(e) Whether Defendant concealed from and/or failed to disclose to Plaintiff and Class Members that defective glass is used in the Ovens;

(f) Whether Defendant breached the implied warranty of merchantability;

(g) Whether Defendant breached express warranties relating to the Ovens;

(h) Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(i) Whether Defendant should be enjoined from selling and marketing the defective Ovens; and

(j) Whether Defendant engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing defective Ovens.

153. **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of Class Members. She has no interests antagonistic to those of Class Members. Plaintiff retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiff intends to prosecute this action vigorously.

154. **Injunctive/Declaratory Relief**: The elements of Rule 23(b)(2) are met. Defendant will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the defective glass at issue. Plaintiff has standing to make this claim because she would purchase another Oven provided that the common Defect is fixed going forward. Defendant acted and refused to act on grounds that apply generally to the Class Members, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

155. **Predominance and Superiority**: Plaintiff and Class Members all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of their individual claims, it is likely that few Class Members could afford to seek

legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

156. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

157. Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class appropriate.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

158. Defendant possessed exclusive knowledge about the Defect, which is unavailable to Plaintiff and the Class Members.

159. Throughout the time period relevant to this action, Defendant concealed the nature of the Defect. As a result, neither Plaintiff nor the absent Class Members could have discovered the Defect, even upon reasonable exercise of diligence.

160. Despite its knowledge of the above, Defendant (a) failed to disclose, (b) concealed, and (c) continues to conceal critical information relating to the Ovens' defective glass windows, even though, at any point in time, it could have

communicated this material information to Plaintiff and the Class Members through individual correspondence, media releases, or other means.

161. Plaintiff and Class Members relied on Defendant to disclose the dangerous Defect because the flawed nature of the Ovens' glass window could not be discovered through reasonable efforts by Plaintiff and the Class Members.

162. Thus, the running of all applicable statutes of limitations have been suspended with respect to any claims that Plaintiff and the Class Members have against Defendant as a result of Defendant's material omissions, by virtue of the fraudulent concealment doctrine.

163. Defendant was under a continuous duty to Plaintiff and Class Members to disclose the true nature, quality, and character of its Ovens. However, Defendant concealed the true nature, quality, and character of the Oven, as described herein. Defendant knew of the Defect for years but concealed it and/or failed to alert purchasers or potential purchasers. Defendant maintained exclusive control over information concerning the glass used in the Ovens. Based upon the foregoing, Defendant is estopped from relying on any statutes of limitation or repose that might otherwise apply to the claims asserted by Plaintiff herein in defense of this action.

**COUNT I**
**Breach of Implied Warranties**
**(On Behalf of Plaintiffs, the Nationwide Class and, alternatively, the Virginia Subclass)**

164. Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

165. Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Oven. Defendant knew or had reason to know of the specific use for which the Ovens, as a good, are purchased.

166. Defendant entered into agreements with retailers and suppliers to sell its Ovens to Class Members.

167. Defendant provided Plaintiff and Class Members with implied warranties that the Ovens are merchantable and fit for the ordinary purposes for which they are used and sold and are not otherwise injurious to consumers.

168. However, the Ovens are not fit for their ordinary purpose of reliably and safely cooking and/or heating food. This is because, inter alia, the Oven contains defective glass-front windows, made from sub-optimal materials, and containing impurities, which explode, preventing it from safely cooking and/or heating food without the risk of the glass shattering. This shattering glass could injure the consumer, damage the consumer's property, and taint the food that the consumer was attempting to cook and/or heat. In fact, once the glass breaks or shatters, the Ovens

are rendered entirely useless, as they cannot be used without an intact glass-window door to seal the Oven and keep the heat trapped within. For all these reasons, the Oven is not fit for its particular purpose of safely cooking and/or heating food.

169. The Defect renders the Ovens unsafe, unreliable, and unusable. Therefore, Defendant breached the implied warranty of merchantability.

170. Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Retailers selling Defendant's products were not intended to be the ultimate consumers of the Oven and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer, making Plaintiff and Class Members the intended beneficiaries.

171. Defendant's statements contained in its product literature, including the Oven's warranty, make it clear that Defendant intended that its warranties apply to Plaintiff and Class Members as third-party beneficiaries. Likewise, it was reasonably foreseeable that Plaintiff and consumer Class Members would be the intended beneficiaries of the Ovens and warranties.

172. Defendant impliedly warranted that the Ovens were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the Oven manufactured, supplied, distributed, and/or sold by

Defendant was safe and reliable for heating and/or cooking food; and (ii) a warranty that the Oven would be fit for its intended use while it was being operated.

173. Contrary to the applicable implied warranties, the Ovens, at the time of sale and thereafter, were not and are not fit for the ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe methods of heating and/or cooking food. Instead, the Ovens suffer from a defective design and/or manufacture, as alleged herein.

174. Defendant's sale of defective and dangerous appliances and failure to provide a refund caused the implied warranty to fail in its essential purpose.

175. Defendant breached the implied warranties because the Ovens were sold with the Defect, which substantially reduced and/or prevented it from being used for safe food preparation.

176. Defendant was put on constructive notice about its breach through its review of consumer complaints described herein, complaints on Defendant's own website, and upon information and belief, through product testing. Any efforts to limit the implied warranties in a manner that would exclude coverage of the Ovens is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Ovens is null and void.

177. As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered, and continue to suffer, financial damage and injury, and are

entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT II**
**Breach of Implied Warranty**
**Magnuson-Moss Warranty Act**
**(On behalf of the Nationwide Class)**

178. Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

179. Plaintiff and Class Members are "consumers" as defined in 15 U.S.C. § 2301(3).

180. Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

181. The Ovens are each a "consumer product[]" as defined in 15 U.S.C. § 2301(1).

182. Defendant extended an implied warranty to Plaintiff and Class Members by operation of 15 U.S.C. § 2301(7), and this implied warranty covers the Defect in its Ovens.

183. Defendant breached this implied warranty by selling defective Ovens that were neither merchantable nor fit for their intended purposes.

184. As a direct and proximate result of Defendant's breach of the implied warranty under the Magnuson-Moss Act, Plaintiff, and the Class, have been damaged in an amount to 'be proven at trial.

**COUNT III**
**Unjust Enrichment/Restitution**
**(On Behalf of Plaintiffs, the Nationwide Class and, alternatively, the Virginia Subclass)**

185. Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

186. Defendant has been unjustly enriched as a result of the conduct described in this Complaint.

187. Defendant received a benefit from Plaintiff and Class members in the form of payment for the Ovens.

188. Retention of these benefits by Defendant would be unjust and inequitable because Defendant received these benefits by engaging in the unlawful, unjust, and wrongful acts, omissions, and practices described in this Amended Complaint.

189. The benefits (or at least some portion the benefits) that Defendant received were not legitimately earned and came at the expense of Plaintiff and Class members.

190. Defendant knows that the Ovens can physically harm its customers, but nonetheless continues to sell them without warning.

191. Defendant's conduct is unjust, inequitable, and wrongful, but systematically engages in this conduct anyway in order to gain unfair advantages and reap unearned financial benefits.

192. There is no justification for Defendant's continued silence as customers purchase the defective and dangerous Ovens.

193. It is therefore against equity and good conscience to permit Defendant to retain the proceeds from their sales of the defective Ovens.

194. Plaintiff and Class Members are entitled to restitution and disgorgement of all amounts unjustly retained by Defendant, as well as other appropriate relief.

## COUNT IV

### Fraudulent Omission or Concealment
### (On Behalf of Plaintiffs, the Nationwide Class and, alternatively, the Virginia Subclass)

195. Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

196. At all relevant times, Electrolux was engaged in the business of designing, manufacturing, distributing, and selling the Ovens.

197. Electrolux, directly and through its representatives or agents, delivered Ovens to its distributors and various other distribution channels.

198. Electrolux willfully, falsely, and knowingly omitted various material facts regarding the quality and character of the Ovens.

199. Rather than disclose the Defect to Plaintiff and other prospective purchasers of Ovens, Electrolux concealed the Defect.

200. Electrolux omitted and concealed this material information to drive up sales, maximize profits, and maintain its market power, as consumers would not purchase Ovens, or would pay substantially less for them, had they known the truth.

201. Plaintiff and Class members could not have discovered the Defect prior to it manifesting in their Ovens.

202. Electrolux was in exclusive possession of information concerning the Defect's existence, which would have been material to reasonable consumers, and thus was obligated to disclose the Defect to Plaintiff and Class members, at the point of sale or otherwise.

203. Electrolux also had a duty to disclose because it made many general affirmative representations about the quality, warranty, functionality, and durability of the Ovens as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, functionality, and durability.

204. Even when faced with complaints regarding the Defect, Electrolux often refused to acknowledge the issue. As a result, Class members were misled as to the true condition of the Ovens once at the time of purchase and again when the Defect was complained of, to Electrolux. The omitted and concealed facts were material

because they directly impact the value, appeal, and usability of the Ovens purchased by Plaintiff and Class members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose for which they were purchased, are material concerns to a consumer.

205. Although Electrolux had a duty to disclose the Defect to consumers, it failed to do so.

206. Plaintiff and Class members sustained injury at the time they purchased Ovens that suffer from the Defect, which Defendant failed to disclose and actively concealed from them. Had Plaintiff and the Class known about the Defect at the time of purchase, they would have paid substantially less for their Ovens, or would not have purchased them and avoided the significant out-of-pocket costs they have or will incur to repair or replace Ovens once the Defect manifests.

207. Electrolux's acts were done maliciously, oppressively, deliberately, and with intent to mislead, and in reckless disregard of Plaintiff's and Class members' rights and well-being, and in part to enrich itself at the expense of consumers. Electrolux's acts were done to gain commercial advantage over competitors, and to drive consumers away from consideration or competitor devices. Electrolux's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

## COUNT V
**Violation of the Virginia Consumer Protection Act**
**(VA. Code Ann. § 59.1-196, *et seq*.)**
**(On behalf of the Virginia Subclass)**

208. Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

209. Plaintiff Yanovitch brings this claim on behalf of herself and the Virginia Subclass against Defendant.

210. The Virginia Consumer Protection Act ("VCPA") prohibits "practices" which include "[u]sing any other deception, fraud, false pretense, or misrepresentation in connection with a consumer transaction." VA. Code Ann. § 59.1-200.

211. Defendant is a "supplier" as defined under VA. Code Ann. § 59.1-198.

212. Each sale of the Ovens was a "consumer transaction" within the meaning of Va. Code Ann. § 59.1-198.

213. Plaintiff and the Virginia Subclass suffered ascertainable loss as a direct and proximate result of Defendant's unfair and deceptive acts and practices. Had Plaintiff and the Virginia Subclass known that the Ovens were defective, they would not have purchased them, or would have paid significantly less for the Ovens. Among other injuries, Plaintiff and the Virginia Subclass overpaid for their Ovens, and their Ovens suffered a diminution in value.

214. Pursuant to VA. Code Ann. § 59.1-204, Plaintiff and the Virginia Subclass seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial, including damages for loss of property, and (b) statutory damages in the amount of $500 for each Plaintiff. Additionally, because Defendant's conduct was committed willfully and knowingly, Plaintiff and the Virginia Subclass are entitled to recover, for each Plaintiff, the greater of (a) three times actual damages or (b) $1,000.

215. Plaintiff and the Virginia Subclass also seek an order enjoining Defendant's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under VA. Code Ann. § 59.1-204 *et se*

**COUNT VI**
**Breach of Implied Warranty**
**(VA. Code Ann. § 8.2-314)**
**(On behalf of the Virginia Subclass)**

216. Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

217. Plaintiff Yanovitch brings this claim on behalf of herself and the Virginia Subclass against Defendant.

218. Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Ovens. Defendant knew

or had reason to know of the specific use for which the Ovens, as a good, are purchased.

219. Defendant entered into agreements with retailers and suppliers to sell its Ovens to Plaintiff and the members of the Virginia Subclass.

220. Defendant provided Plaintiff and the members of the Virginia Subclass with implied warranties that the Ovens are merchantable and fit for the ordinary purposes for which they are used and sold and is not otherwise injurious to consumers.

221. However, the Ovens are not fit for their ordinary purpose of reliably and safely cooking and/or heating food. This is because, *inter alia*, the Ovens contain defective glass-front windows which are prone to explode, preventing them from safely cooking and/or heating food without the substantial risk of the glass shattering. This shattering glass could injure the consumer, damage the consumer's property, and taint the food that the consumer was attempting to cook and/or heat. In fact, once the glass breaks or shatters, the Ovens are rendered entirely useless, as they cannot be used without an intact glass-window door to seal the Oven and keep the heat trapped within. For all these reasons, the Ovens are not fit for their particular purpose of safely cooking and/or heating food.

222. The Defect renders the Ovens unsafe, unreliable, and unusable. Therefore, Defendant breached the implied warranty of merchantability.

223. Privity is not required because Plaintiff and the members of the Virginia Subclass are the intended beneficiaries of Defendant's warranties and its sale through retailers. Retailers selling Defendant's products were not intended to be the ultimate consumers of the Ovens and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer, making Plaintiff and the members of the Virginia Subclass the intended beneficiaries.

224. Defendant's statements contained in its product literature, including the Ovens' warranty, make it clear that Defendant intended that its warranties applied to Plaintiff and the members of the Virginia Subclass as third-party beneficiaries of the Ovens and warranties.

225. Defendant impliedly warranted that the Ovens were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that the Oven manufactured, supplied, distributed, and/or sold by Defendant was safe and reliable for heating and/or cooking food; and (ii) a warranty that the Oven would be fit for its intended use while it was being operated.

226. Contrary to the applicable implied warranties, the Ovens, at the time of sale and thereafter, was not and is not fit for the ordinary and intended purpose of providing Plaintiff and the members of the Virginia Subclass with reliable, durable, and safe methods of heating and/or cooking food. Instead, the Ovens suffer from a defective design and/or manufacture, as alleged herein.

227. Defendant's sale of defective and dangerous appliances and failure to provide a refund caused the implied warranty to fail in its essential purpose.

228. Defendant breached the implied warranties because the Ovens were sold with the Defect, which substantially reduces its utility for, and/or prevented it from, being used for safe food preparation.

229. Defendant was put on constructive notice about its breach through its review of consumer complaints described herein, complaints on Defendant's own website, and upon information and belief, through product testing. Any effort to limit the implied warranties in a manner that would exclude coverage of the Oven is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Oven is null and void.

230. Defendant's actions, as complained of herein, breached the implied warranty that the Ovens were of merchantable quality and fit for such use, in violation of VA. Code Ann. § 8.2-314.

231. As a direct and proximate result of the foregoing, Plaintiff and the Virginia Subclass suffered and continue to suffer, financial damage and injury, and are entitled to all damages, including damages for loss of property, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT VII**
**Declaratory Relief**
**(On Behalf of Plaintiffs and the Nationwide Class)**

232. Plaintiff repeats and realleges, as if fully stated herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

233. Defendant has acted or refuses to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief under the Declaratory Judgment Act (28 U.S.C. §2201) is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23.

234. "In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. §2201(a)

235. Here, an actual controversy exists regarding the safety of Defendant's Ovens. Plaintiff seeks a ruling that:

a. The Ovens have defects that result in glass doors exploding under ordinary use;

b. Any limitation of consumer rights in Defendant's warranty is void as unconscionable;

c. Defendant must notify owners of the Defect;

d. Defendant will reassess all prior warranty claims and pay the full cost of repairs and damages relating to the Defect; and

e. Defendant will pay the cost of inspection to determine whether any Class member's Ovens needs replacement due to the Defect.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgement against Defendant as follows:

a. Entering judgment in favor of Plaintiff against Defendant;

b. Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

c. Appointment of Plaintiff as Class Representative for the Class;

d. Appointment of Plaintiff's counsel as Class Counsel;

e. A declaration that Electrolux violated the state statutes that form the basis for Plaintiff's primary statutory claims;

f. A declaration that Electrolux was unjustly enriched by its conduct as described herein;

g. A declaration that the limitations on Electrolux's warranties are unenforceable as set forth herein;

h. Monetary damages;

i. Statutory damages;

j. Restitution;

k. Injunctive relief;

l. Disgorgement of all monies received by Electrolux as a result of the unlawful, unjust, unfair, and deceptive acts and practices described herein;

m. Penalties as provided by law;

n. Treble damages;

o. A permanent injunction enjoining Electrolux from continuing the unlawful, unjust, unfair, and deceptive acts and practices described herein, including but not limited to, an injunction preventing incorporation of the Defect in future oven models;

p. Pre-judgment and post-judgment interest;

q. Reasonable attorneys' fees and expenses; and

r. Such other further relief that the Court deems just and equitable.

Dated: December 5, 2025

**DELEEUW LAW LLC**

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw (#3569)
1301 Walnut Green Road
Wilmington, DE 19807
(302) 274-2180
brad@deleeuwlaw.com

OF COUNSEL:

**MIGLIACCIO & RATHOD LLP**
Nicholas A. Migliaccio (pro hac vice forthcoming)
Jason S. Rathod (pro hac vice forthcoming)
412 H. Street NE
Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

**SCOTT HIRSCH LAW GROUP PLLC**
Scott D. Hirsch (pro hac vice forthcoming)
6810 N. State Road 7
Coconut Creek, FL 33073
Tel: (561) 569-6283
scott@scotthirschlawgroup.com

**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson (pro hac vice forthcoming)
David A. Goodwin (pro hac vice forthcoming)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone:(612)333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com

*Counsel for Plaintiff and the putative class*